RAPHAEL GRAYBILL
Chief Legal Counsel
Office of the Governor
STEPHEN C. BULLOCK
Special Counsel
PO Box 200801
Helena, MT  59620-0801
ph. (406) 444-3179
fax. (406) 444-5529
raphael.graybill@mt.gov
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| STEPHEN C. BULLOCK, in his official capacity as Governor of Montana; MONTANA DEPARTMENT OF REVENUE, | Case No.: _____ |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| INTERNAL REVENUE SERVICE; DAVID KAUTTER, in his official capacity as Acting Commissioner of the Internal Revenue Service; UNITED STATES DEPARTMENT OF THE TREASURY, | |
| Defendants. | |

Because Defendants have unlawfully interfered with Montana's ability to gather data that the state needs in order to administer its tax laws, Plaintiffs respectfully seek this Court's intervention under the Administrative Procedure Act and allege as follows:

1

**INTRODUCTION**

1.      The Internal Revenue Service ("IRS") has long required organizations that are tax-exempt under § 501(c) of the Internal Revenue Code to collect and disclose the names and addresses of their substantial contributors.  By statute, § 501(c)(3) charitable organizations must furnish this information to the IRS each year.  26 U.S.C. § 6033(b)(5).  Section 6033 also authorizes the Secretary of the Treasury to require this information from other tax-exempt organizations, and the Secretary has promulgated regulations requiring all § 501(c) organizations to disclose this information to the IRS.  26 C.F.R. § 1.6033-2.  Organizations disclose this information to the IRS on Schedule B of the Form 990.

2.      Though substantial contributor information is first disclosed federally, many states examine the Form 990 and the Schedule B when making their own tax-exemption determinations.  Federal law authorizes the IRS to share this information with state officials for the purpose of administering state laws.  26 U.S.C. § 6103(d).

3.      On July 16, 2018, Defendants the Internal Revenue Service, the United States Department of the Treasury, and David Kautter, Acting Commissioner of the Internal Revenue Service, announced that the IRS would no longer require disclosure of substantial contributor information on the Schedule B for 501(c) organizations other than § 501(c)(3) groups.  The change was made through a sub-regulatory document called a "Revenue Procedure"--specifically, Revenue

Procedure 2018-38.[1]  Revenue Procedure 2018-38 amends a prior legislative rule--26 C.F.R. § 1.6033.2--and the Administrative Procedure Act ("APA") requires agencies to notify the public and provide an opportunity for comment before amending a legislative rule.  *See* 5 U.S.C. § 553(b).  The IRS promulgated its new Revenue Procedure in violation of the APA without notice and without giving the public any opportunity to comment.  Accordingly, because Defendants promulgated Revenue Procedure 2018-38 "without observance of procedure required by law," under the APA, this Court must hold the revenue procedure unlawful and set it aside. 5 U.S.C. § 706(2)(D).

4.     Montana law provides that Plaintiff Montana Department of Revenue ("MTDOR") cannot grant tax-exempt status to organizations whose net income inures to the benefit of any private shareholder or individual ("private inurement"). Mont. Code. Ann. § 15-31-102(1).  Because Montana law does not independently require organizations seeking tax-exempt status to file the names and addresses of their significant contributors with the state, MTDOR relies on the availability of this information from the IRS.  *See* 26 U.S.C. § 6103(d).  MTDOR also relies on the exhaustiveness of the IRS's private inurement determinations.  Changes that weaken the integrity of federal private inurement determinations will frustrate Montana's tax regime, impose substantial pressure on Montana to change its laws, and require

---

[1] *Available at* https://www.irs.gov/pub/irs-drop/rp-18-38.pdf.

Montana to expend substantial resources to develop new procedures for state determinations.

## PARTIES

5.      The Montana Department of Revenue is an executive agency of the State of Montana.  MTDOR resides within and throughout the State of Montana, including through its office in Great Falls.  In administering Montana's tax laws, MTDOR determines whether organizations doing business in Montana qualify for tax-exempt status under state law.

6.      Steve Bullock is the Governor of Montana.  He is the state's chief executive and exercises supervisory authority over MTDOR pursuant to the Montana Constitution and state statute.  He sues in his official capacity.

7.      Defendant Internal Revenue Service is an executive agency of the United States within the meaning of the APA, 5 U.S.C. §§ 551, 701(b)(1).

8.      Defendant United States Department of the Treasury is an executive agency of the United States within the meaning of the APA, 5 U.S.C. §§ 551, 701(b)(1).

9.      Defendant David Kautter is the Acting Commissioner of the Internal Revenue Service.  He is sued in his official capacity.  He serves as the head of the IRS in Washington, D.C.

## JURISDICTION AND VENUE

10.    Because this action arises under the APA, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

11.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because Plaintiff MTDOR, an executive agency of the State of Montana, is a resident of this judicial district.   Divisional venue is proper in the Great Falls Division under L.R. 3.2(b) and Mont. Code. Ann. §§ 25-2-118, -125 because Defendants IRS and United States Department of the Treasury are found throughout the state, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this Division.

## BACKGROUND

## I.    PRIOR STATUTORY AND REGULATORY FRAMEWORK

12.    Section 6033(b) of the Internal Revenue Code requires 501(c)(3) organizations to file annual reports disclosing "the total of the contributions and gifts received by it during the year, and the names and addresses of all substantial contributors."   26 U.S.C. § 6033(b)(5).   Substantial contributors are defined in 26 U.S.C. § 507(d)(2) as those having contributed more than $5,000, in aggregate.

13.    "Although the statute does not address contributor reporting by tax-exempt organizations other than those described in § 501(c)(3), the implementing regulations under § 6033(a) generally require all types of tax-exempt organizations

to report the names and addresses of all persons who contribute $5,000 or more in a year under [26 C.F.R.] § 1.6033-2(a)(2)(ii)(f)."  Revenue Procedure 2018-38, at *3 (describing regulatory background).

14.     The disclosure requirements for tax-exempt organizations other than for organizations described in § 501(c)(3) are pursuant to a binding legislative rule, 26 C.F.R. § 1.6033-2.  *See* Treasury Decision 7122, 36 Fed. Reg. 11,025 (June 8, 1971).

15.     "Under existing rules, the names and addresses of contributors for all types of organizations are reported on Schedule B, 'Schedule of Contributors,' filed with Forms 990, 990-EZ, and 990-PF, or, with respect to organizations described in § 501(c)(21), in Part IV of Form 990-BL."  Revenue Procedure 2018-38, at *4 (describing relevant forms).

16.     By regulation, the Commissioner of the IRS may relieve classes of organizations from filing disclosures if the Commissioner determines that the information to be disclosed is not necessary for the efficient administration of federal tax laws.  26 C.F.R. § 1.6033-2(g)(6).  This regulation does not supersede the statutory requirement that amendments to legislative rules must be promulgated through the APA's notice-and-comment process.

17.     Federal law authorizes the IRS to share the returns and return information of 501(c) organizations--including the Schedule B--with certain state

officials for the purpose of, and to the extent necessary in, the administration of state laws.  26 U.S.C. § 6103(d).

18.    The disclosures made by groups other than 501(c)(3) organizations and private foundations remain confidential from the public, but are available both to the IRS for its purposes and to state tax authorities, including Montana, pursuant to 26 U.S.C. § 6103(d).

## II.    THE ROLE OF DONOR IDENTITY IN PRIVATE INUREMENT DETERMINATIONS

19.    Under federal law and the law of most states, social welfare organizations may not receive tax exemptions if any part of their earnings or income "inures to the benefit of any private shareholder or individual."  *See* 26 U.S.C. § 501(c)(4)(B).  This is often referred to as the prohibition on private inurement.

20.    To determine whether an organization violates the prohibition on private inurement--and thus may not receive tax-exempt status--tax authorities may look to that organization's significant contributors.  A similar determination dictates whether a group can maintain its tax-exempt status after it has been granted an exemption.

21.    For example, if a plumber organized her business under the guise of a tax-exempt social welfare organization, she might receive tax-exempt income from her clients by means of "contributions."  But if a tax regulator reviewed the names and addresses of the plumber's significant contributors, the regulator might

determine that these persons are the plumber's clients--not contributors--and that tax-exempt status is inappropriate.

22.     Accordingly, the names and addresses of significant contributors are important to the ongoing administration of tax-exemption determinations, both at the state level and federally.

23.     Given the strength and uniformity of federal disclosure requirements, many states treat the IRS's tax-exemption and private inurement determinations as highly reliable and persuasive--if not authoritative--in making their own state law determinations.

24.     The names and addresses of significant contributors to federal tax-exempt organizations also play a significant role in ferreting out other nefarious activity conducted by entities masquerading as charitable, social welfare, or other such groups.  For example, many § 501(c)(4) social welfare organizations use large portions of their funds to engage in political activity.  Federal law prohibits foreign nationals from participating in federal, state, or local elections, such as by contributing to a campaign or by purchasing television or digital advertising to support a candidate in the immediate run-up to an election.  *See* 52 U.S.C. § 30121. If the IRS knows that an organization is engaged in political activity, and receives a disclosure that the organization's only significant contributors are foreign nationals, then the IRS is well-positioned to identify and stop a serious violation of federal law.

Absent the names and addresses of the significant contributors, however, the IRS is less capable of making such a determination. Other nonprofit organizations that are exempt under § 501(c), such as §§ 501(c)(5) and (c)(6) organizations, may also use funds to engage in political activity, and so knowledge of the names and addresses of their substantial contributors is relevant to the enforcement of election law as well.

25.     Sections 501(c)(4), (c)(5), and (c)(6) organizations have become particularly active in elections in recent years. By one estimate, campaign spending by "dark money" groups--primarily, organizations that are tax-exempt under §§ 501(c)(4), (c)(5), and (c)(6)--increased more than fifty-fold between 2004 and 2016. *See* Center for Responsive Politics, *Dark Money Basics*, https://www.opensecrets.org/dark-money/basics (last visited July 23, 2018) [https://perma.cc/GQR2-6GDT].

26.     Beyond tax regulators, a range of other interests in civil society--candidates, election regulators, the press--rely on the accuracy and integrity of tax-exemption determinations for these organizations.

## III.   PROCEDURES FOR TAX-EXEMPT DETERMINATIONS BY THE STATE OF MONTANA

27.     Plaintiff Governor Bullock exercises executive and supervisory authority over MTDOR and other executive agencies of the State of Montana. He is ultimately responsible for directing MTDOR's administration of Montana's tax laws, including operations and policies related to tax-exempt organizations.

28.     Under Montana law, certain organizations qualify for exemptions from state taxation.

29.     When an organization does business in the State of Montana, it is required to register with the Montana Secretary of State.  Organizations may mark on their registration whether they intend to seek tax-exempt status in Montana.  After registration at the Secretary of State, the information is forwarded to Plaintiff the Montana Department of Revenue.

30.     Under Montana law, organizations cannot obtain tax-exempt status if any part of their net income inures to the benefit of any private shareholder or individual.  Mont. Code. Ann. § 15-31-102(1).  Any organization that does is likely to be denied tax-exempt status under Montana law.

31.     Organizations indicating that they wish to seek a tax exemption from the State of Montana must demonstrate that no part of their net income inures to the benefit of any private shareholder or individual.  Organizations begin by completing Montana tax form EXPT,[2] indicating entity type, address, contact person, and other information.  Organizations are also required to submit articles of incorporation, by-laws, latest financial statement showing assets, liabilities, receipts and disbursements, and an "affidavit showing the character of the organization, the

---

[2] *Available at* https://app.mt.gov/myrevenue/Endpoint/DownloadPdf?yearId=178 [hereinafter "Form EXPT"].

purposes for which it was organized, its actual activities, the sources and disposition of its income, and whether any of its income may inure to the benefit of any private shareholder or individual."  Form EXPT.

32.    The sources of an organization's income--particularly the identities of its significant contributors--are important in determining whether the organization complies with the prohibition on private inurement.  Because of the rigor of the existing federal tax-exemption process, federal tax-exemption determinations are part of Montana's analysis for tax exemptions.  Applicant organizations must indicate whether they have received a federal exemption, and Plaintiff MTDOR relies on the IRS's tax-exemption determinations.   In this process, some organizations submit complete federal Form 990s and attendant schedules, including the Schedule B containing significant contributor information, when seeking Montana tax-exempt status.

33.    Once an organization has received tax-exempt status from Montana, Plaintiff MTDOR may later review this determination and seek additional information.  For these post-determination investigations, MTDOR may request the names and addresses of significant contributors from the IRS.  Federal law authorizes the IRS to share this information with state officials for the purpose of administering state laws.  26 U.S.C. § 6103(d).

34.     By eliminating the requirement that significant contributor information be reported to the IRS for groups other than 501(c)(3) charities, Revenue Procedure 2018-38 effects several distinct kinds of injury to Montana.

35.     First, Revenue Procedure 2018-38 harms Montana's ability to conduct private inurement determinations for tax-exempt organizations doing business in the state, both by reducing the information available to the state from the IRS and by weakening the overall rigor and reliability of the federal process.

36.     Montana's private inurement determinations rely on the strength of the federal tax-exemption process, including the vigorous disclosure requirements for significant contributors provided by 26 U.S.C. § 6033(b)(5) and 26 C.F.R. § 1.6033-2. These disclosure requirements bolster the overall quality of federal tax-exemption determinations.  If significant contributor information is not reported to the IRS for groups other than § 501(c)(3) charities, it will harm Montana's ability to make private inurement determinations by degrading the quality and reliability of the federal private inurement determinations.

37.     Moreover, if the IRS no longer requires certain tax-exempt organizations to disclose the names and addresses of significant contributors, then Montana can no longer request that information from the agency when conducting its own determinations.  Because Montana will be forced to obtain this information

from potentially thousands of organizations directly, rather than from the IRS, this frustrates the efficient administration of Montana's tax laws.

38.    Montana has over 10,000 tax-exempt organizations, the greatest number per capita in the United States and nearly twice the national average.[3] Whenever Montana grants tax-exempt status to an organization, it may be forgoing income that would otherwise contribute to the state's treasury.  An increased rate of mistakes, or decreased reliability, in the tax-exemption process exposes the state to additional financial loss.  It also increases the potential for abuse of Montana's tax-exempt status granted by the state.

39.    Second, by eliminating the requirement that names and addresses of significant contributors be disclosed to the IRS for groups other than § 501(c)(3) charities, Revenue Procedure 2018-38 will shoulder Montana with additional financial and administrative burdens connected to private inurement determinations.

40.    Damage to the strength of these disclosure requirements at the federal level requires state tax agencies like Plaintiff MTDOR to fundamentally change their state tax-exemption review processes, including adopting new administrative rules, developing new forms and processes, requiring new and state-specific information,

---

[3] *See* Scott Greenberg, *Which States Have the Most Tax-Exempt Organizations?*, Tax Foundation, Dec. 29, 2015, https://taxfoundation.org/which-states-have-most-tax-exempt-organizations.

and devoting more staff and other government resources away from other areas of tax administration and toward tax-exempt organizations practice.

41.    Montana will be forced to assume the burden of developing unique processes to solicit the significant contributor information contained in the current Form 990, Schedule B, including legislative and rule changes.  Montana's current affidavit requirements do not contain the level of specificity required by the Form 990, Schedule B.

42.    Moreover, where previously the State of Montana could access significant contributor information in one, centralized location--the IRS--now that the IRS will no longer collect such information, Montana will be required to solicit it from every new applicant organization individually, and annually from the thousands of extant organizations that have already received tax-exempt status from Montana but that will not report their significant contributors to the IRS in future years.

43.    For state governments like Montana's, there is a significant burden involved in reorienting tax processes.  At present, Montana does not have any full-time staff or general fund monies devoted to tax-exempt organizations practice.

44.    On information and belief, other states--including those that require the federal Schedule B to be filed, as well as those that do not require it but rely on the overall strength of federal disclosures in making their determinations--will face the

same or greater burdens if significant contributors are no longer disclosed to the IRS under 26 C.F.R. § 1.6033-2.

45.    Third, by eliminating the requirement that names and addresses of significant contributors be disclosed to the IRS for groups other than § 501(c)(3) charities, Revenue Procedure 2018-38 causes Montana to suffer informational injury. *See Federal Election Commission v. Akins,* 524 U.S. 11, 21 (1998) (recognizing "informational injury" as "injury in fact"). The names and addresses of significant contributors for organizations other than § 501(c)(3) charities are available to the State of Montana by statute. 26 U.S.C. § 6103(d). The information will not be available by this statutory mechanism if it is no longer disclosed to the IRS.

46.    Fourth, the State of Montana, by and through its Department of Revenue and its chief executive Governor Bullock, has a quasi-sovereign interest in the administration of its own tax laws and policies. Taxation is a sovereign power of the states. If the names and addresses of significant contributors are not reported to the IRS for groups other than § 501(c)(3) charities, it will invade upon Montana's quasi-sovereign interest in the administration of its tax policies.

47.    Plaintiffs Governor Bullock, in his official capacity as Governor of the State of Montana, and MTDOR, an executive agency of the State of Montana, are not "normal litigants for the purposes of invoking federal jurisdiction."

*Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).  Here, "[t]he parties' dispute turns on the proper construction of a congressional statute, the APA, which authorizes challenges to final agency action for which there is no other adequate remedy in a court."  *Texas v. United States*, 809 F.3d 134, 152 (5th Cir. 2015) (quoting *Mass. v. EPA*, 549 U.S. at 518; 5 U.S.C. § 704), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016).

48.   If the names and addresses of significant contributors to § 501(c) organizations other than § 501(c)(3) charities are not disclosed to the IRS, it will "impos[e] substantial pressure" on the State of Montana to change its laws.  *See id.* at 153.  "[S]tates have a sovereign interest in the 'power to create and enforce a legal code.'"  *Id.* (citation omitted).  Montana "would incur significant costs" in changing its laws to create a new procedure for the collection of significant contributor names and addresses for use in its private inurement determinations.  *See id.* at 155.

## IV.   REVENUE PROCEDURE 2018-38[4]

49.   On July 16, 2018, Defendants announced that organizations other than §§ 501(c)(3) and 527 political groups will no longer be required to disclose the names and addresses of their substantial contributors under 26 C.F.R. § 1.6033-2.

50.   Defendants purported to effect this change by way of a sub-regulatory, internal guidance document called a Revenue Procedure.

---

[4] *Available at* https://www.irs.gov/pub/irs-drop/rp-18-38.pdf.

51.     Typically, an IRS "Revenue Procedure . . . is an internal procedural rule that does not create or determine any rights, obligations, or legal consequences." *See Facebook, Inc. v. Internal Revenue Serv.*, No. 17-CV-06490-LB, 2018 WL 2215743, at *17 (N.D. Cal. May 14, 2018) (citations omitted).

52.     Revenue Procedure 2018-38 states that

> tax-exempt organizations required to file the Form 990 or Form 990-EZ, other than those described in § 501(c)(3), will no longer be required to provide names and addresses of contributors on their Forms 990 or Forms 990-EZ and thus will not be required to complete these portions of their Schedules B (or complete the similar portions of Part IV of the Form 990-BL).  Similarly, organizations described in § 501(c)(7), (8), or (10) will no longer be required to provide on Forms 990 or Forms 990-EZ the names and addresses of persons who contributed more than $1,000 during the taxable year to be used for exclusively charitable purposes.

Revenue Procedure 2018-38, at *6.

53.     In other words, Revenue Procedure 2018-38 purports to relieve organizations of the obligation to report contributors' names and addresses previously required by 26 C.F.R. § 1.6033-2.

54.     Revenue Procedure 2018-38 is a reviewable "final agency action" within the meaning of the APA, 5 U.S.C. § 704, because it represents the culmination of the agency's decision-making and "determines rights or obligations or triggers legal consequences."  *T-Mobile S., LLC v. City of Roswell*, 135 S. Ct. 808, 817 n.4 (2015) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  There is nothing

tentative about Revenue Procedure 2018-38, and it determines organizations' rights and obligations by relieving organizations other than § 501(c)(3) charities of the obligation under 26 C.F.R. § 1.6033-2 to furnish the names and addresses of their substantial contributors.

55.    In promulgating Revenue Procedure 2018-38, Defendants provided no notice or opportunity for comment.

56.    Additionally, Defendants did not supply a reasoned analysis of their decision to amend a legislative rule when promulgating Revenue Procedure 2018-38.

57.    Because Defendants' actions did not conform with the requirements of the APA for amending a legislative rule, Defendants have acted in excess of their statutory authority or limitations.

58.    Had Plaintiffs been given notice and afforded an opportunity to comment, they would have notified Defendants of the significant, adverse effects of the putative change in disclosure rules.  Reduced transparency for § 501(c) organizations at the federal level has significant downstream effects.  In the context of elections and election spending, reduced transparency at the IRS upends settled expectations that federal tax-exempt organizations are what they purport to be: domestically-funded social welfare groups validly participating in elections, for example.  Absent the disclosure of the names and addresses of significant

18

contributors to the IRS, the task of eradicating foreign influence in elections becomes harder if state and federal campaign finance officials cannot rely on the IRS. The same goes for tax officials seeking to determine whether organizations are evading requirements about what proportion of their funds can be dedicated to political activity. And for state treasuries, reduced disclosure of significant contributor information makes it far harder for tax officials to target abuse of the tax-exempt designation.

## <u>COUNT ONE</u>:
## FAILURE TO OBSERVE PROCEDURE FOR RULEMAKING REQUIRED BY LAW IN VIOLATION OF THE APA

59.     Plaintiffs repeat and reallege each of the foregoing allegations.

60.     The APA requires courts to "hold unlawful and set aside agency action" that has been promulgated "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

61.     Revenue Procedure 2018-38 is a substantive or legislative rule because it purports to amend the disclosure requirements contained in 26 C.F.R. § 1.6033-2 and to change the obligations and legal consequences for certain tax-exempt organizations around disclosure; it "effect[s] a change in existing law" because it "effectively amends a prior legislative rule." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (citation omitted).

62.     Before a substantive rule like Revenue Procedure 2018-38 may take

effect, the APA requires the agency to issue a notice of proposed rulemaking that includes "either the terms or substance of the proposed rule or a description of the subjects and issues involved" in order to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b)(3), (c).

63.    Defendants did not comply with this notice-and-comment requirement in promulgating Revenue Procedure 2018-38. Rather, Defendants merely purported to announce it as applicable for returns that will become due on or after May 15, 2019.

64.    The fact that Defendants labeled the substantive change a "Revenue Procedure" does not excuse their violation of the APA. Moreover, a provision that allows the Commissioner to relax some filing requirements does not allow Defendants to evade notice-and-comment: that provision does not permit Defendants to wholesale repeal substantive disclosure requirements that affect obligations and have legal consequences outside of the procedures of the APA for legislative rules.

65.    Plaintiffs MTDOR and Bullock have no adequate or available administrative remedy; in the alternative, any effort to obtain an administrative remedy would be futile.

66.     Plaintiffs MTDOR and Bullock have "no other adequate remedy in a court." 5 U.S.C. § 704.

67.     Defendants' action in promulgating Revenue Procedure 2018-38 has harmed and will continue to harm Plaintiffs MTDOR and Bullock by impairing Montana's ability to make tax-exemption determinations.

## COUNT TWO:
## UNAUTHORIZED AGENCY ACTION IN VIOLATION OF THE APA

68.     Plaintiffs repeat and reallege each of the foregoing allegations.

69.     The APA forbids agency action "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

70.     The disclosure requirements for tax-exempt organizations other than those described in § 501(c)(3) are pursuant to a binding legislative rule, 26 C.F.R. § 1.6033-2, that was promulgated according to the relevant requirements under the APA, including notice-and-comment. *See* 5 U.S.C. § 553.

71.     The Commissioner's ability to relieve certain unnecessary filing requirements under § 1.6033-2(g)(6) does not supersede the statutory requirement that amendments to legislative rules must be promulgated through the APA's notice-and-comment process.

72.     By purporting to amend a legislative rule without conforming to the requirements of the APA, Defendants have acted in excess of their statutory authority or limitations.

21

73.     The fact that Defendants labeled the substantive change a "Revenue Procedure" does not excuse their violation of the APA.  Revenue Procedure 2018-38 is a substantive or legislative rule because it purports to amend the disclosure requirements contained in 26 C.F.R. § 1.6033-2 and to change the obligations and legal consequences for certain tax-exempt organizations around disclosure; it "effect[s] a change in existing law" because it "effectively amends a prior legislative rule."  *Wilson v. Lynch*, 835 F.3d at 1099 (citation omitted).

74.     Plaintiffs MTDOR and Governor Bullock have no adequate or available administrative remedy; in the alternative, any effort to obtain an administrative remedy would be futile.

75.     Plaintiffs MTDOR and Bullock have "no other adequate remedy in a court."  5 U.S.C. § 704.

76.     Defendants' actions in promulgating Revenue Procedure 2018-38 have harmed and will continue to harm Plaintiffs MTDOR and Governor Bullock.

## <u>COUNT THREE:</u>
## ARBITRARY AND CAPRICIOUS RULEMAKING IN VIOLATION OF THE APA

77.     Plaintiffs repeat and reallege each of the foregoing allegations.

78.     The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

79.    To comply with the APA, an agency must supply a "reasoned analysis" of its decision to amend a legislative rule. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983).

80.    In promulgating Revenue Procedure 2018-38, Defendants did not supply a reasoned analysis of the decision to relieve tax-exempt organizations other than § 501(c)(3) charitable organizations from the requirement that they furnish the names and addresses of their substantial contributors.

81.    The fact that Defendants labeled their substantive change a "Revenue Procedure" does not excuse their violation of the APA.  Moreover, a provision that allows the Commissioner to relax some filing requirements does not allow Defendants to amend a legislative rule without supplying a reasoned analysis.  That provision does not permit Defendants to wholesale repeal substantive disclosure requirements that affect obligations and legal consequences outside of the procedures of the APA for legislative rules.

82.    Plaintiffs MTDOR and Governor Bullock have no adequate or available administrative remedy; in the alternative, any effort to obtain an administrative remedy would be futile.

83.    Plaintiffs MTDOR and Bullock have "no other adequate remedy in a court."  5 U.S.C. § 704.

84.     Defendants' actions in promulgating Revenue Procedure 2018-38 have

harmed and will continue to harm Plaintiffs MTDOR and Governor Bullock.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Issue an order and judgment setting aside Revenue Procedure 2018-38

under 5 U.S.C. § 706(2);

b.      Award Plaintiffs their costs, attorneys' fees, and other disbursements

for this action; and

c.      Grant any other relief this Court deems appropriate.

Dated:      July 24, 2018                          Respectfully submitted,

                                                   /s/ *Raphael Graybill*
                                                   Raphael Graybill
                                                   PO Box 200801
                                                   Helena, MT  59620-0801
                                                   raphael.graybill@mt.gov
                                                   ph. (406) 444-3179
                                                   fax. (406) 444-5529

                                                   Attorney for Plaintiffs

24

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Local Rules 7.1 and 24.1 of the Rules of Procedure of the United States District Court for the District of Montana, I certify the following concerning the Complaint:

1.  the document is double spaced except for footnotes and quoted and indented material;

2.  the document is proportionally spaced, using Times New Roman, 14 point font; and

3.  The document contains 4,658 words as calculated by Microsoft Word.

Dated:      July 24, 2018

/s/ *Raphael Graybill*
Raphael Graybill