RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

JOSEPH A. SERGI
Senior Litigation Counsel
LAURA M. CONNER
LANDON M. YOST
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C. 20001
(202) 305-0868 (Sergi); (202) 514-6438 (Conner); (202) 307-2144 (Yost)
(202) 307-0054 (fax)
joseph.a.sergi@usdoj.gov
laura.m.conner@usdoj.gov
landon.m.yost@usdoj.gov

Of Counsel:
KURT G. ALME
United States Attorney
VICTORIA FRANCIS
Assistant United States Attorney

*Attorneys for the defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| STEPHEN C. BULLOCK, et al., | |
| Plaintiffs, | Case No. 4:18-cv-00103-BMM |
| v. | |
| INTERNAL REVENUE SERVICE, et al., | **BRIEF IN SUPPORT OF DEFENDANTS' SECOND MOTION TO DISMISS** |
| Defendants. | |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.  BACKGROUND ...........................................................................................3

   A. The IRS may specify the information that tax-exempt organizations must supply on their information returns .......................................................3

   B. Rev. Proc. 2018-38 specified that non-501(c)(3) exempt organizations are no longer required to report donor information ...........................................6

   C. Montana and New Jersey have never received the return information of exempt organizations from the IRS, and have not satisfied the prerequisites necessary to request it ..............................................................................7

III.  ARGUMENT................................................................................................10

   A. Plaintiffs lack Article III standing because they have no legally protected interest in receiving donor information from the IRS and have suffered no actual harm caused by Rev. Proc. 2018-38 ...................................................10

      1. Plaintiffs have no legally protected interest ................................11

      2. Plaintiffs' alleged injuries are hypothetical.................................14

         i.  New Jersey's additional claims of injury do not give rise to standing ....17

         ii. Governor Bullock and the Montana Department of Revenue have not established that they have legal authority to assert Montana's alleged interests ...................................................................................19

   B. Plaintiffs lack statutory standing because they do not come within the zone of interests of any statute that authorizes their suit..................................20

   C. Congress has committed decisions about what information to collect from exempt organizations to IRS discretion................................................22

   D. Rev. Proc. 2018-38 is an interpretive and procedural rule for which notice-and-comment procedures are not required ..........................................26

IV.  CONCLUSION ...........................................................................................29

# TABLE OF AUTHORITIES

## Federal Cases

*AICPA v. IRS*, 2018 WL 3893768 (D.C. Cir. Aug. 14, 2018) .................................27

*Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934 (9th Cir. 2005) ..................21

*Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir. 1980) .........................................28

*Boorstein v. Men's Journal*, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ..........13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).............................................15

*E.J. Friedman v. U.S.*, 6 F.3d 1355 (9th Cir. 1993).............................................25

*Facebook v. IRS*, 2018 WL 2215743 (N.D. Cal. May 14, 2018) ...........................14

*FEC v. Akins*, 524 U.S. 11 (1998)........................................................................13

*Gozlon-Peretz v. U.S.*, 498 U.S. 395 (1991)........................................................12

*Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018) .............................20

*Heckler v. Chaney*, 470 U.S. 821 (1985) ...................................................... 22, 26

*Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082 (9th Cir. 2003) ..................................26

*JEM Broad. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994)...............................................29

*Lexmark v. Static Control Components*, 134 S.Ct. 1377 (2014) ...........................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................... 10, 11

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................. 16, 17

*Match-E-Be-Nash-She-Wish Band v. Patchak*, 567 U.S. 209 (2012)....................20

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) .............................................28

*Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796 (9th Cir. 2015) ........... 20, 21

*PETA v. United States Fish & Wildlife Serv.*, 2013 WL 12131726 (C.D. Cal. June 26, 2013) .........................................................................................................13

*Texas v. U.S.,* 340 F.Supp.3d 579 (N.D. Texas 2018).............................................3

*Texas v. U.S.*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016).................................................................................... 17, 18

*Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253 (4th Cir. 2011) ....................11

*Webster v. Doe*, 486 U.S. 592 (1988) ..................................................................24

*West Virginia ex rel. Morrisey v. HHS Dep't*, 827 F.3d 81 (D.C. Cir. 2016) .........16

*West Virginia v. HHS Dep't.*, 145 F.Supp.3d 94 (D.D.C. 2015)............................17

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .......................................................15

*Wilderness Society v. Rey*, 622 F.3d 1251 (9th Cir. 2010) ....................................13

## State Cases

*Bullock v. Fox*, 2019 MT 50 ...................................................................19
*McGrath v. Martz*, 2004 WL 2985143 (November 04, 2004)..................19

## Federal Statutes

26 U.S.C § 6033 ........................................................................... passim
26 U.S.C. § 6103 .......................................................................... passim
26 U.S.C. § 6104 .................................................................. 5, 7, 12, 15
28 U.S.C. § 1331 ...............................................................................20
28 U.S.C. § 1391 ...............................................................................20
5 U.S.C. § 553 ..................................................................................26
5 U.S.C. § 701 ........................................................................... 22, 24

## State Statutes

N.J. Admin. Code § 1:30-5.1 ..............................................................18

## State Rules

2018 NJ REG TEXT 511835 (NS), 50 N.J.R. 2549 ...............................19

## Federal Regulations

26 C.F.R. § 1.6033-2 ............................................................. 4, 5, 12, 22
26 C.F.R. § 301.6103 ...........................................................................7

## Other Authorities

Rev. Proc. 2003-21.............................................................................6
Rev. Proc. 2011-15.............................................................................4, 6
Rev. Proc. 2018-38........................................................................ passim
Rev. Proc. 80-44................................................................................6
Rev. Proc. 83-23................................................................................6
Rev. Proc. 94-17................................................................................6
Rev. Proc. 95-48................................................................................6
Rev. Proc. 96-10................................................................................6
U.S. Const., Art. II § 2 ......................................................................10

## I.    INTRODUCTION

This lawsuit presents the extraordinary case of two state tax agencies suing the IRS in an attempt to dictate the information that it must collect from federal taxpayers. Neither state has ever before sought or received from the IRS the information they are now trying to force the IRS to continue collecting, and both states lack the ability to obtain this information from the IRS even if it was collected. Moreover, as made even clearer by the addition of New Jersey as a plaintiff, if these states need this information they can request it directly from the exempt organizations themselves, without forcing the IRS to continue to collect information it has determined it no longer needs to collect for federal tax administration purposes.

As a threshold matter, this action must be dismissed because plaintiffs lack Article III standing. They have suffered no concrete or actual harm from the IRS's decision because they have never before sought from the IRS the donor information that they now claim they need the IRS to continue collecting, and they have no legal right to the information even if the challenged Revenue Procedure were revoked. Plaintiffs also lack statutory standing, because they do not fall within the "zone of interests" of any relevant statute that permits this suit.

But even if plaintiffs did have standing to bring this suit, the IRS's issuance of Rev. Proc. 2018-38 would not be reviewable under the APA. First, Congress has

explicitly committed decisions about what information to collect from exempt organizations to the IRS's discretion, precluding APA review. In issuing Revenue Procedure 2018-38, the IRS[1] exercised its longstanding statutory discretion to determine what information it collects from exempt organizations to meet its tax administration needs. The IRS specified that non-501(c)(3) exempt organizations no longer needed to supply it with the names and addresses of their donors ("donor information"). This exercise of discretion was nothing new: the IRS has repeatedly revised reporting requirements for exempt organizations through revenue procedures, as permitted by statute. The most recent revision, Rev. Proc. 2018-38, resulted in the determination that the benefits of receiving this information, if any, were outweighed by the costs and risks associated with collecting and retaining it. Rev. Proc. 2018-38.  That is well within the IRS's statutory discretion to determine.

Finally, as to plaintiffs' claims that Rev. Proc. 2018-38 is subject to the APA's notice-and-comment procedures, this revenue procedure is an interpretive and procedural rule and those procedures do not apply.

[1] For convenience Treasury and the IRS are referred to interchangeably and collectively throughout as simply the IRS.

## II.    BACKGROUND

### A.    The IRS may specify the information that tax-exempt organizations must supply on their information returns

In general, the Internal Revenue Code imposes federal taxes on all entities

on income from any source. An exception applies for certain organizations that

qualify under § 501(c) as one of 28 types of nonprofit organizations, including

those that are organized and operated exclusively for charitable, educational, and

similar purposes (§ 501(c)(3)). These entities are largely exempt from federal

income taxes,[2] but must meet certain substantive requirements to qualify for tax-

exempt status. For example, § 501(c)(4) groups generally must be "operated

exclusively for the promotion of social welfare." 26 U.S.C. § 501(c)(4).

In addition to the substantive requirements, § 6033[3] generally requires

exempt organizations to file annual information returns on Form 990 "stating

specifically the items of gross income, receipts, and disbursements, and such other

---

[2] A § 501(c) organization is still subject to tax on its "unrelated business income." 26 U.S.C. § 501(b).
[3] The ACA amended § 6033 to add two provisions related to information that hospitals and co-op insurers must provide to the IRS. Neither of these provisions is at issue in this case. The defendants note, however, that in *Texas v. U.S.*, 340 F.Supp.3d 579 (N.D. Texas 2018), the court declared the entire Affordable Care Act (P.L. 111-148) unenforceable and stayed that judgment pending appeal.

3

information for the purpose of carrying out the internal revenue laws as the

Secretary may by forms or regulations prescribe." 26 U.S.C § 6033(a)(1);

26 C.F.R. § 1.6033-2(a)(2)(i). For all exempt organizations other than those that

have 501(c)(3) status (hereafter, "exempt organizations"), the statute leaves it to

the IRS's discretion to specify what "other information" it needs to collect,

including whether to collect donor information.[4] The statute also contains a

discretionary exception: "The Secretary may relieve [most exempt organizations]

… from filing such a return where he determines that such filing is not necessary to

the efficient administration of the internal revenue laws." 26 U.S.C. §

6033(a)(3)(B). For example, pursuant to this authority, the IRS has relieved most

organizations with typical gross receipts of $50,000 or less from the requirement to

file an annual information return on Form 990 as long as they submit a Form 990-

N e-Postcard. Rev. Proc. 2011-15, 2011-3 I.R.B. 322 (January 17, 2011).

Before Rev. Proc. 2018-38, the IRS by regulation had required most exempt

organizations to report on Schedule B of Form 990 the "names and addresses of all

persons who contributed … $5,000 or more" during the taxable year. 26 C.F.R.

§ 1.6033-2(a)(2)(ii)(f). The IRS had also required by regulation that the exempt

---

[4] For 501(c)(3) organizations, the statute requires the reporting of donor
information.  26 U.S.C. § 6033(b)(5).

4

organizations described in § 501(c)(7) (social clubs), § 501(c)(8) (fraternal beneficiary societies), or § 501(c)(10) (domestic fraternal societies) report on Schedule B the names of each donor who contributed more than $1,000 during the taxable year to be used exclusively for certain purposes, such as religious, charitable, or educational. 26 C.F.R. § 1.6033-2(a)(2)(iii)(d). That same regulation also provides that "the Commissioner may relieve any organization or class of organizations … from filing, … in whole or in part the annual return required by this section…," 26 C.F.R. § 1.6033-2(g)(6), which is consistent with the statutory authorization for the Secretary to "relieve any organization … from filing such a return," 26 U.S.C. § 6033(3)(B).

Copies of the Forms 990 filed by exempt organizations must be made available to the public, but donor information on Schedules B is strictly prohibited from public disclosure. 26 U.S.C. § 6104(b). Thus, the IRS must redact this donor information before disclosing these annual returns to the public, creating the risk of inadvertent disclosure of confidential donor information due to human or technical error.

**B.      Rev. Proc. 2018-38 specified that non-501(c)(3) exempt organizations are no longer required to report donor information**

The IRS has long revised reporting requirements for exempt organizations through revenue procedures.[5] Consistent with that practice, the IRS issued Rev. Proc. 2018-38, which eliminated the requirement that exempt organizations report donor information. Rev. Proc. 2018-38 also eliminated the requirement that organizations described in §§ 501(c)(7), (8), or (10) report the previously required donor information. The instructions to the 2018 Schedule B to Form 990 incorporate these changes, and inform these organizations that they are no longer required to report donor information. *See* https://www.irs.gov/pub/irs-pdf/f990ezb.pdf.

Rev. Proc. 2018-38 specifies that exempt organizations still must collect the donor information, maintain it, and make it available to the IRS upon request. Rev. Proc. 2018-38. Thus, the IRS fully maintains its ability to demand this donor information should the IRS determine that it is relevant.

---

[5] *See*, *e.g.*, Rev. Proc. 2011-15, 2011-3 I.R.B. 322; Rev. Proc. 2003-21, 2003-1 C.B. 448; Rev. Proc. 95-48, 1995-2 C.B. 418; Rev. Proc. 96-10, 1996-1 C.B. 577. The IRS also has used this same process to completely exempt groups from the requirement to file Forms 990. Rev. Proc. 94-17; Rev. Proc. 83-23; Rev. Proc. 80-44.

**C.** **Montana and New Jersey have never received the return information of exempt organizations from the IRS, and have not satisfied the prerequisites necessary to request it**

Although plaintiffs claim that they need the IRS to continue collecting donor information, neither state has taken advantage of the mechanisms to request this information from the IRS, and New Jersey has actually been obtaining this information not from the IRS, but directly from exempt organizations. Complaint, ¶48. Although § 6103 generally prohibits the disclosure of tax return information, there are different mechanisms through which a state may request return information from the IRS, once the state has met the safekeeping requirements established by the IRS. *See* 26 U.S.C. § 6103(p); 26 C.F.R. § 301.6103(p)(4)-1; IRS Publication 1075.

Plaintiffs in their amended complaint now cite § 6104(c), the provision that specifically addresses disclosure of Form 990 information to states, but neither state receives information from the IRS pursuant to this provision. This subsection generally provides that the IRS "may" disclose returns and return information of exempt organizations to an appropriate state officer upon written request, but only to the extent necessary in administering state laws regulating the solicitation or administration of charitable funds or charitable assets of such organizations. 26 U.S.C. § 6104(c)(3). As with disclosures under § 6103(d), discussed below,

7

established IRS procedures for disclosures under § 6104(c) require a state to enter into a disclosure agreement with the IRS before it may make such a request. *See* I.R.M. § 7.28.2;[6] Declaration of Phyllis Grimes, ¶2.[7] Montana and New Jersey do not have a § 6104(c) disclosure agreement with the IRS, and thus do not receive any information pursuant to § 6104(c). *Id.*, ¶3.

The IRS may also disclose Form 990 information to states pursuant to § 6103(c), but only at the "taxpayer's request." 26 U.S.C. § 6103(c). Disclosures made under this subsection are part of a different joint federal and state program that provides that a taxpayer can consent to disclosure by designating another person to receive its return. Grimes Decl., ¶4. A state, however, may only participate in this program by executing a standard Memorandum of Understanding. *Id.* Montana and New Jersey have not done this for information specific to exempt organizations. *Id.*, ¶5.

Section 6103(d), the only provision originally cited by plaintiffs, also allows for the disclosure of certain return information to states, but it does not specifically authorize the disclosure of donor information. Pursuant to § 6103(d) states may

---

[6] *See* https://www.irs.gov/irm/part7/irm_07-028-002.
[7] Affidavits may be submitted with a motion to dismiss for lack of jurisdiction without converting it to a motion for summary judgment. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

8

make a written request for certain returns and return information by executing

agreements with the IRS, which serve as the written requests required by this

subsection. The IRS has executed § 6103(d) agreements with Montana and New

Jersey. Grimes Decl., Exs. 3-8. These agreements, however, do not provide for the

disclosure of the donor information found on Schedule B to Form 990. *Id.*, ¶¶7-8.

This is understandable because § 6103(d) only authorizes disclosure, upon written

request, of returns and return information to state tax agencies "with respect to the

taxes imposed" by the chapters named therein. 26 U.S.C. § 6103(d). Donor

information of exempt organizations is typically not information with respect to

taxes imposed by any listed chapter. Thus, unless unusual circumstances were to

cause an exempt organization to be subject to a tax imposed by one of these

chapters and donor information to somehow be relevant to those taxes, the plain

terms of § 6103(d) do not authorize disclosure of donor information to states,

because this information is not information "with respect to the taxes imposed" by

any chapter.

Finally, at the risk of stating the obvious, if a state determines that it needs

this donor information, nothing prevents it from requesting this information

directly from exempt organizations. In fact, New Jersey provides a clear example

of this, as it is in the process of updating its rules after the issuance of Rev. Proc.

9

2018-38 to ensure that exempt organizations continue to provide it with this information. Complaint, ¶¶45-48, 60.

## III.   ARGUMENT

### A.   Plaintiffs lack Article III standing because they have no legally protected interest in receiving donor information from the IRS and have suffered no actual harm caused by Rev. Proc. 2018-38

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., Art. III § 2. To bring a case or controversy before the Court, plaintiffs must have suffered an "injury in fact" that has a "causal connection" with the injury it complains of and that is likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotes omitted). An "injury in fact" for purposes of standing must rise to the level of an "invasion of a legally protected interest." *Id*. The injury must also be "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Id*.  Plaintiffs cannot meet these threshold requirements.

The challenged revenue procedure "imposes none of the obligations on [plaintiffs] that, in other cases, have provided a state standing to challenge a federal statute:" it "does not directly burden [plaintiffs];" "does not commandeer [plaintiffs'] enforcement officials;" and "does not threaten [plaintiffs'] sovereign

10

territory." *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 268 (4th Cir. 2011) (internal citations omitted). Nor does it create a conflict between federal law and Montana or New Jersey state law that in certain cases might lead to a state having standing to challenge federal action. *Id.* at 268-70 (finding that the conflict between the Affordable Care Act's individual mandate and Virginia state law did not give rise to a sufficient injury-in-fact for standing purposes).

Rather, plaintiffs' assertion of standing rests on little more than the desire to have the federal government continue to collect donor information that they never received from the IRS. Thus, their alleged injury is entirely "conjectural and hypothetical." *Lujan*, 504 U.S. at 560-61.

Moreover, even if Montana and New Jersey have suddenly discovered a need to obtain this information from the IRS for purposes of this litigation, they would have no legal right to the information even in the absence of Rev. Proc. 2018-38: applicable law does not obligate the IRS to supply them with this information. Plaintiffs thus cannot establish any injury to a "legally protected interest." *Id.*

### 1.  Plaintiffs have no legally protected interest

An "injury in fact" must rise to the level of an "invasion of a legally protected interest."  *Lujan*, 504 U.S. at 560-61. Because plaintiffs have no legal

right to receive donor information from the IRS they lack any legally protected interest on which to base standing.

As discussed, § 6104(c) governs the disclosure of donor information to states, but neither Montana nor New Jersey meet the statutory prerequisites and therefore have no legally protected interest under this provision.

Plaintiffs appear to allege that Montana and New Jersey are authorized to obtain the donor information under § 6103(d) in conjunction with 26 C.F.R. § 1.6033-2, but this is incorrect. The more specific statute, § 6104(c), controls over the more general provisions of § 6103(d). *See*, *e.g.*, *Gozlon-Peretz v. U.S.*, 498 U.S. 395, 407 (1991). Moreover, the plain terms of § 6103(d) do not apply to exempt organization donor information, but only to return information "with respect to taxes imposed by" the specified chapters named therein. 26 U.S.C. § 6103(d)(1). Finally, even if plaintiffs could use § 6103(d) to obtain the donor information they seek, their current § 6103(d) disclosure agreements with the IRS do not provide for the disclosure of any Form 990 information, including the donor information at issue. Grimes Decl. ¶¶7-8; Exs. 3-8.

Importantly, even if plaintiffs were somehow to have a legally protected interest in obtaining through either § 6104 or § 6103 the return information the IRS collects on Form 990, such an interest is not a statutory right to dictate to the IRS

12

*what* information it must collect from exempt organizations on that form. Congress has explicitly granted the IRS the discretion, within certain parameters, to determine what information to collect on the form. Plaintiffs cannot possibly have the legal right to dictate to the IRS the "other information … [the IRS] may by forms or regulations prescribe," 26 U.S.C. § 6033(a)(1), or to prohibit the IRS from issuing a discretionary exception allowed by 26 U.S.C. § 6033(a)(3)(B). Congress granted that authority exclusively to the IRS.

Plaintiffs claim that they have suffered informational injury because information that was previously available to them by statute is no longer available. *See* Complaint, ¶¶66-67. But informational injury can give rise to standing only when access to that information is statutorily guaranteed. *Wilderness Society v. Rey*, 622 F.3d 1251, 1258–60 (9th Cir. 2010); *PETA v. U.S. Fish & Wildlife Serv.*, 2013 WL 12131726, at *3 (C.D. Cal. June 26, 2013); *Boorstein v. Men's Journal*, 2012 WL 2152815, at *4 (C.D. Cal. June 14, 2012).  While plaintiffs cite *FEC v. Akins*, 524 U.S. 11, 21 (1998), that case involved information that the applicable statute "required be made public." *Wilderness Society*, 622 F.3d at 1258 (discussing *Akins*).  Here, in contrast, there is no statutory guarantee that plaintiffs

13

can receive donor information, and plaintiffs have therefore suffered no cognizable informational injury due to the IRS's issuance of Rev. Proc. 2018-38.[8]

Without a legal right for plaintiffs to the donor information at issue, the IRS has not invaded a legally protected interest by discontinuing the collection of this information on Schedule B of Form 990, and plaintiffs consequently lack standing. *See*, *e.g.*, *Facebook v. IRS*, 2018 WL 2215743, at *12 (N.D. Cal. May 14, 2018) ("Because Facebook has no legally enforceable right to take its tax case to IRS Appeals, the IRS has not invaded a legally protected interest by refusing to refer Facebook's case to IRS Appeals, and Facebook consequently lacks standing.").

## 2.  Plaintiffs' alleged injuries are hypothetical

Plaintiffs have suffered no concrete or actual injury from Rev. Proc. 2018-38. First, they have never actually requested or received from the IRS the donor information they claim they need the IRS to continue to collect. Instead, they merely hypothesize that Montana someday "*may request* the names and addresses of significant contributors from the IRS," or that the IRS might someday be a "*potential* avenue" for New Jersey to pursue this information. Complaint ¶¶43, 64

---

[8] Moreover, with respect to New Jersey, there has been no informational injury even in any practical sense: before Rev. Proc. 2018-38 New Jersey received this information directly from exempt organizations, and after Rev. Proc. 2018-38 it will continue to receive this information directly from these organizations.

(emphasis added).  In fact, neither state has taken the preliminary steps necessary to receive such information. To receive donor information under § 6104(c)(3)—which governs the disclosure of donor information to states—state tax agencies must satisfy certain prerequisites, including entering into a disclosure agreement with the IRS. *See* I.R.M. § 7.28.2; Grimes Decl., ¶2. Montana and New Jersey do not have § 6104(c) agreements with the IRS and have therefore not been receiving the information they now claim they need. *Id.*, ¶3. For this reason alone, plaintiffs' claims of harm are pure speculation about future actions they might take, which is exactly the kind of hypothetical situation a federal court is not constitutionally permitted to adjudicate. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added; internal quotation marks omitted)).

Second, as the addition of New Jersey as a plaintiff makes clear, if plaintiffs need this donor information, Rev. Proc. 2018-38 does not inhibit them in any way from obtaining it. New Jersey obtains that information directly from the exempt

organizations themselves, and Montana could do the same,[9] particularly since Rev. Proc. 2018-38 leaves in place the requirement that exempt organizations must continue to maintain this information. The fact that doing so might require the allocation of administrative resources or the enactment of new rules or regulations is not an injury-in-fact, as it would require the Court to accept the "extraordinary claim" that simply leaving states with the *discretion* to decide "whether to implement a federal statute," or in this case, to replicate the effect of a prior federal regulation by exercising their own sovereign powers, is an injury-in-fact. *West Virginia ex rel. Morrisey v. HHS Dep't*, 827 F.3d 81, 83-84 (D.C. Cir. 2016) (West Virginia lacked standing to challenge DHHS's decision to not enforce the Affordable Care Act's minimum coverage requirement during transition period, which left enforceability up to the states, because its injury was not sufficiently concrete and particular); *see also Massachusetts v. Mellon*, 262 U.S. 447, 482 (1923) (finding no "justiciable controversy" where the statute did not "require the states to do or to yield anything").

---

[9] Indeed, it appears that, to the extent Montana has been receiving any donor information at all, it has been doing so by obtaining the information directly from the organizations. *See* Complaint, ¶¶40-43.

16

Plaintiffs do not plausibly assert that they would be harmed by the alleged weakening of the "overall rigor and reliability of the federal process" (Complaint, ¶51), nor that their own laws and regulations are not rigorous or reliable. Nor do they cite any legal principle that a state's own failure to rigorously or reliably enforce its own laws could give rise to a claim of harm inflicted by the *federal* government. Their "claimed injury, at bottom, involves a general desire to challenge the legality of a federal action, [but the] Supreme Court held long ago ... that a State's general challenge to the lawfulness of federal action, predicated on an abstract injury to the State's sovereignty, is not sufficient to confer standing." *West Virginia v. HHS Dep't.*, 145 F.Supp.3d 94, 102 (D.D.C. 2015), *aff'd* 827 F.3d 81 (D.C. Cir. 2016) (citing *Mellon*, 262 U.S. at 482).

### i. New Jersey's additional claims of injury do not give rise to standing

The amended complaint alleges that plaintiffs face "substantial pressure" to change their laws, and that New Jersey has incurred a variety of costs in updating its rules to clarify that exempt organizations must still submit their donor information to the state. Complaint, ¶¶69, 60-65 (citing *Texas v. U.S.*, 809 F.3d 134, 153 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016)). But such allegations do not give rise to Article III injuries even under what the dissent in *Texas* referred to as the "majority's breathtaking expansion of

17

state standing." *Texas*, 809 F.3d at 194. In *Texas*, the Fifth Circuit found that the immigration program DAPA presented states with the forced choice of incurring millions of dollars in costs or changing their laws, and that this gave rise to an Article III injury. Here, however, New Jersey is not presented with any such forced choice. Indeed, it is not even changing its laws: before Rev. Proc. 2018-38 New Jersey received donor information directly from exempt organizations, and after Rev. Proc. 2018-38 New Jersey intends to receive donor information directly from exempt organizations. The fact that New Jersey decided it needed to update its rules to clarify that exempt organizations still must provide this information does not give rise to an Article III injury, and plaintiffs have cited no legal authority for the proposition that the administrative costs a state incurs simply to change or update its rules or laws can give rise to standing.

Moreover, these costs are too non-concrete and speculative to constitute an Article III injury. In fact, according to its own agency proposal that accompanies its proposed rule, New Jersey itself does not believe that it will incur any costs. New Jersey law requires that an agency must prepare a "notice of proposal" for a proposed rule change that includes an "'Economic Impact' statement, which describes the expected costs, revenues, and other economic impact upon governmental bodies of the State…." N.J. Admin. Code § 1:30-5.1. New Jersey's

18

"Economic Impact" statement for its proposed rule, however, does not list a single expected cost to the state. 2018 NJ REG TEXT 511835 (NS), 50 N.J.R. 2549(a). And even with respect to exempt organizations themselves, New Jersey "does not believe the costs … will be substantial," largely because the IRS still requires these organizations to maintain this donor information. *Id.*

### ii. Governor Bullock and the Montana Department of Revenue have not established that they have legal authority to assert Montana's alleged interests

Governor Bullock and the Montana Department of Revenue (the Montana plaintiffs) allege injuries to Montana's quasi-sovereign and sovereign interests, but they have not established that they have the legal authority to assert these interests, particularly considering the fact that it does not appear that attorneys from the Montana Attorney General's office are representing the Montana plaintiffs. *See* Application for Writ of Prohibition, *McGrath v. Martz*, 2004 WL 2985143 (November 04, 2004) ("The Governor's attempt to prosecute and defend any litigation on behalf of the State clearly exceeds the limitation set in the Constitutional Convention against her assumption of 'direct responsibility of performing the duties assigned . . . the attorney general.'") (internal citations omitted); *see also Bullock v. Fox*, 2019 MT 50, ¶41 (finding that the Governor had standing in that case, but also noting that the Governor did "not petition [the] Court

19

on behalf of a vague and general state interest, but in his official capacit[y] as Governor").

**B.     Plaintiffs lack statutory standing because they do not come within the zone of interests of any statute that authorizes their suit**

In addition to their lack of Article III standing, plaintiffs also lack standing for the independent reason that they do not fall "within the class of plaintiffs whom Congress has authorized to sue." *Lexmark v. Static Control Components*, 134 S.Ct. 1377, 1387 (2014). To determine this, the Court must ask whether the interests plaintiffs assert are "arguably within the zone of interests to be protected or regulated by the statute that [plaintiffs say] was violated." *Match-E-Be-Nash-She-Wish Band v. Patchak*, 567 U.S. 209, 224 (2012) (internal quotations omitted).

This limitation on standing "is not toothless" in an APA suit, as plaintiffs must show that they fall within the "zone of interests" protected by the underlying substantive statute that is implicated by the challenged agency action. *Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 807-08 (9th Cir. 2015); *see also, e.g.*, *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1166 (9th Cir. 2018). Plaintiffs cannot do so here. They are presumably claiming that § 6033, or perhaps §§ 6103 and 6104, are the substantive statutes implicated by the IRS's action, as these are the only non-APA statutes cited in the complaint, besides § 501 and the general jurisdictional statutes 28 U.S.C. §§ 1331 and 1391. But § 6033 does not protect

20

any state interest in the administration of federal tax law, and there are no plausible

allegations that the IRS has violated §§ 6103 or 6104.

Section 6033 sets forth the return filing obligations of exempt organizations

by prescribing certain requirements regarding the information they must report,

while granting the IRS the discretion to make the majority of decisions regarding

these requirements. Thus, the plain purpose of § 6033 is to enable the IRS to

administer the tax code as it applies to exempt organizations. States like Montana

and New Jersey are not within the class of intended beneficiaries of § 6033.

Indeed, states are not mentioned, alluded to, or even contemplated by the

provision. Because plaintiffs' "interests are so marginally related to […] the

purposes implicit" in § 6033, "it cannot be reasonably assumed that Congress

intended to permit" states to challenge decisions made by the IRS pursuant to this

section. *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005)

(internal quotation omitted); *Nw. Requirements*, 798 F.3d at 809.

As for §§ 6103 and 6104, Rev. Proc. 2018-38 was not issued under them,

and it is difficult to see how plaintiffs could allege that the IRS has violated these

sections, or that these are the statutes that "protect[] or regulate[]" "the interest

sought to be protected" by plaintiffs. *Id.* at 807 (internal quotation omitted). Thus,

these sections also fail to provide plaintiffs with statutory standing.

21

**C.    Congress has committed decisions about what information to collect from exempt organizations to IRS discretion**

The APA provides the framework for determining when a court may review an agency decision, but such review is precluded to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In other words, review is precluded "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). This is just such a case.

The tax code provides that all exempt organizations must file a return "stating specifically the items of gross income, receipts, and disbursements, and *such other information for the purpose of carrying out the internal revenue laws as the Secretary may by forms or regulations prescribe.*" 26 U.S.C. § 6033(a)(1) (emphasis added).  Pursuant to that broad grant of authority, the Secretary promulgated a regulation that requires exempt organizations to file the "additional information" of donor names and addresses. *See* 26 C.F.R. §§ 1.6033-2(a)(2)(ii)(f), 1.6033-2(a)(2)(iii)(d)(1). But in that same regulation, the Secretary delegated to the IRS Commissioner the discretion to "relieve any organization or class of organizations … from filing, … in part the annual return required by this section." 26 C.F.R. § 1.6033-2(g)(6). This relief authority is entirely consistent with the statute, which (1) specifies that "such other information" can be prescribed by

22

regulation *or forms*, and (2) expressly and solely grants the Secretary the authority to "relieve any organization … from filing such a return where he determines that such filing is not necessary to the efficient administration of the internal revenue laws." 26 U.S.C. § 6033(a)(3)(B). Rev. Proc. 2018-38 is an exercise of both grants of broad discretion, and is separately authorized by each one: (i) it (along with its follow-on revised Form 990) prescribes by "form[]" which "other information" exempt organizations must provide, and (ii) it is an exercise of the Secretary's broad discretion to "relieve any organization … from filing such a return."

These two broad, statutory grants of power leave no meaningful standard that a court could apply in judging the IRS's exercise of discretion. "[F]or the purpose of carrying out the internal revenue laws as the Secretary may by forms or regulations prescribe," 26 U.S.C. § 6033(a)(1), and "not necessary to the efficient administration of the internal revenue laws," 26 U.S.C. § 6033(a)(3)(B), are so broad as to constitute no meaningful standards, and Congress gives no discrete, objective factors by which a court can judge either one. Also, even though Congress gives a broad purpose for the IRS to request additional information, it leaves to the Secretary's discretion what he "may … prescribe" to accomplish that purpose. Similarly, Congress has given the Secretary the power to relieve certain exempt organizations from filing an information return "*where he determines* that

23

such filing is not necessary to the efficient administration of the internal revenue laws." 26 U.S.C. § 6033(a)(3)(B) (emphasis added). Again, Congress has placed squarely in the agency's domain the determination of what information is or is not necessary for efficient tax administration.

Faced with similar language in another statute, the Supreme Court found that Congress had given no objective factors against which to judge an agency's exercise of discretion. In *Webster v. Doe*, 486 U.S. 592 (1988), the Court addressed whether employee termination decisions under § 102(c) of the National Security Act were committed to agency discretion by law and, thus, not subject to judicial review. The Court observed:

> As an initial matter, it should be noted that § 102(c) allows termination of an Agency employee whenever the Director "shall *deem* such termination necessary or advisable in the interests of the United States" (emphasis added), not simply when the dismissal *is* necessary or advisable to those interests. This standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review.

*Webster*, 486 U.S. at 600 (emphasis original). Based on the language and structure of § 102(c), the Supreme Court found that Congress had committed termination decisions to the agency's discretion and, consequently, that judicial review was precluded by 5 U.S.C. § 701(a)(2). *Id.* at 600-01. The similarly broad and deferential language that Congress chose in § 6033(a) demands the same result

24

here.[10] *See also E.J. Friedman v. U.S.*, 6 F.3d 1355, 1359 (9th Cir. 1993) (finding that statute, which provided that IRS may discharge property from liens if the IRS determines the United States' interest in the property has no value, committed the IRS decision to its discretion and thus was not subject to judicial review).

Congress has invested the IRS with broad authority to determine what information it deems necessary from exempt organizations to fulfill its tax administration duties. The sweeping delegation in § 6033 gives no objective factors by which to judge the IRS's exercise of discretion. An agency's law-enforcement decision not to initiate enforcement proceedings generally is shielded

---

[10] In addition to the two portions of § 6033(a) directly at issue here, Congress – throughout § 6033 – repeatedly stresses the broad discretion it conveys upon the IRS to determine what information it needs from exempt organizations. *See* 26 U.S.C. § 6033(b)(16) (in addition to the specific items that Congress has mandated § 501(c)(3) organizations to report on their returns, Congress also requires them to provide "such other information for purposes of carrying out the internal revenue laws *as the Secretary may require*") (emphasis added); *id.* § 6033(g)(2) (political organizations exempt from tax under IRC § 527 must file returns with certain required information "with *such modifications as the Secretary considers appropriate* to require only information which is necessary for the purposes of carrying out section 527, and … *containing such other information as the Secretary deems necessary* to carry out the provisions of this subsection") (emphases added). The overall structure of § 6033, in addition to the language of the specific portions at issue here, compels the conclusion that Congress has committed to the IRS's discretion its decisions regarding what information it needs from exempt organizations to carry out its tax enforcement duties. *See Webster*, 486 U.S. at 600-01 (examining overall statutory structure in addition to the particular provisions directly at issue).

from judicial review, particularly where Congress gives no objective standard by which to judge the agency's decision. *See Heckler*, 470 U.S. at 837 (finding that "the presumption that agency decisions not to institute proceedings are unreviewable under 5 U.S.C. § 701(a)(2) is not overcome by the enforcement provisions" of the Federal Food, Drug, and Cosmetic Act). The IRS's discretion as to what information it needs to carry out its law-enforcement function is entitled to no less deference.

###### D.     Rev. Proc. 2018-38 is an interpretive and procedural rule for which notice-and-comment procedures are not required

Notice-and-comment procedures are not required for "interpretive rules" or "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). Rev. Proc. 2018-38 qualifies as an interpretive rule because it interprets and clarifies the "other information" that § 6033(a)(1) allows the IRS to require. It also qualifies as a procedural rule because it does not change the substantive criteria that organizations must meet to qualify for tax exemption.

"In general terms, interpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. Legislative [or substantive] rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003).

26

Rev. Proc. 2018-38 clarifies the "other information" that § 6033(a)(1) allows the IRS to require, but it makes no change to the existing law requiring the submission of "gross income, receipts and disbursements" or the law governing the qualifications an organization must maintain to be tax-exempt.

Rev. Proc. 2018-38 is similar to another revenue procedure that the D.C. Circuit recently determined to be interpretive and, thus, not subject to notice and comment. In that case, the applicable statute authorized the IRS to require return preparers to demonstrate necessary qualifications and competency. *AICPA v. IRS*, 2018 WL 3893768, at *8 (D.C. Cir. Aug. 14, 2018). The court found that a revenue procedure establishing education and testing requirements for certain preparers was an interpretive rule because it clarified how a preparer may demonstrate his qualifications and competency. *Id.* Similarly, Rev. Proc. 2018-38 is interpretive because it clarifies the "other information" that certain exempt organizations must provide to the IRS under IRC § 6033. By specifying the type of information – donor information – that certain organizations need not provide, Rev. Proc. 2018-38 interprets and clarifies § 6033's requirement to submit "other information."

Rev. Proc. 2018-38 also is not subject to notice and comment for the independent reason that it is a procedural rule. Procedural rules are "primarily

directed toward improving the efficient and effective operations of an agency, not

toward a determination of the rights [or] interests of affected parties," and they "do

not themselves alter the rights or interests of parties, although [they] may alter the

manner in which the parties present themselves or their viewpoints to the agency."

*Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014) (*quoting Batterton v.*

*Marshall*, 648 F.2d 694, 702 n.34, 707 (D.C. Cir. 1980)).

Changing the information that certain exempt organizations must report (or

not) on their returns does not alter the rights or interests of those organizations.

Regardless of what information the organizations are required to report on their

annual returns, the substantive law and standards that the organization must meet

to remain tax-exempt are unchanged. For example, whether or not a § 501(c)(4)

organization is required to report donor information, the organization must

nonetheless conduct its activities in support of social welfare. Rather than altering

any of the substantive limitations on the activities of tax-exempt organizations,

Rev. Proc. 2018-38 merely addresses the IRS's timing and process for collecting

information that may be used by the IRS to determine compliance with those

unchanged substantive criteria. As Rev. Proc. 2018-38 explains, organizations

"must continue to collect and keep [donor names and addresses] in their books and

records and to make [that information] available to the IRS upon request." As a

result, that information will remain available to the IRS in the event the IRS deems
it necessary.

As a result of the above, Rev. Proc. 2018-38 is a procedural rule and thus not
subject to notice and comment. *See JEM Broad. v. FCC*, 22 F.3d 320, 327 (D.C.
Cir. 1994) (finding that FCC rules that required the dismissal of incomplete license
applications without leave to amend were not subject to notice and comment
because they "did not change the *substantive standards* by which the FCC
evaluates license applications") (emphasis in original).

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss this action.


DATED:  March 27, 2019                  Respectfully submitted,


                                        RICHARD E. ZUCKERMAN
                                        Principal Deputy Assistant Attorney General


                                         /s/ Joseph A. Sergi
                                        JOSEPH A. SERGI
                                        Senior Litigation Counsel
                                        LAURA M. CONNER
                                        LANDON M. YOST
                                        Trial Attorneys
                                        U.S. Department of Justice, Tax Division
                                        *Attorneys for the defendants*

## EXHIBIT INDEX

Exhibit 1 to the Grimes Decl.:    Model Disclosure Agreement with the IRS regarding 26 U.S.C. § 6104(c)

Exhibit 2 to the Grimes Decl.:    Model Memorandum of Understanding with the IRS regarding the MEF Fed/State program for Form 990 information

Exhibit 3 to the Grimes Decl.:    Implementing Agreement between Montana Department of Revenue and IRS regarding 26 U.S.C. § 6103

Exhibit 4 to the Grimes Decl.:    Agreement of Tax Administration between Montana Department of Revenue and IRS regarding 26 U.S.C. § 6103

Exhibit 5 to the Grimes Decl.:    Agreement of Tax Administration between the New Jersey Division of Taxation and the IRS

Exhibit 6 to the Grimes Decl.:    Memorandum of Implementation for the Agreement on Coordination of Tax Administration between the New Jersey Division of Taxation and the IRS

Exhibit 7 to the Grimes Decl.:    Addendum to the Implementing Agreement on the Coordination of Tax Administration between the IRS and the New Jersey Division of Taxation

Exhibit 8 to the Grimes Decl.:    Agreement on Coordination of Tax Administration with New Jersey Division of Revenue

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 6,491 words, excluding the caption, signature block, table of contents and authorities, exhibit index, and certificates of service and compliance. To make this certification, I have relied on the word count contained in the word-processing system used to prepare the brief.

<u>s/ Landon M. Yost</u>
LANDON M. YOST
Trial Attorney

## CERTIFICATE OF SERVICE

I certify that on March 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel for plaintiffs: Stephen C. Bullock; Raphael Graybill; Deepak Gupta; Matthew Wessler; Daniel Wilf-Townsend; Glenn J. Moramarco; Katherine Gregory.

<u>s/ Landon M. Yost</u>
LANDON M. YOST
Trial Attorney

31