RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

JOSEPH A. SERGI
Senior Litigation Counsel
LAURA M. CONNER
LANDON M. YOST
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C. 20001
(202) 305-0868 (Sergi); (202) 514-6438 (Conner); (202) 307-2144 (Yost)
(202) 307-0054 (fax)
joseph.a.sergi@usdoj.gov
laura.m.conner@usdoj.gov
landon.m.yost@usdoj.gov

Of Counsel:
KURT G. ALME
United States Attorney
VICTORIA FRANCIS
Assistant United States Attorney

*Attorneys for the defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| STEPHEN C. BULLOCK, et al., | |
| Plaintiffs, | Case No. 4:18-cv-00103-BMM |
| v. | |
| INTERNAL REVENUE SERVICE, et al., | **COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS AND RESPONSE TO MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  ARGUMENT...........................................................................................3

A.  Plaintiffs lack Article III standing .......................................................3

1.  Plaintiffs have suffered no informational injury that would give rise to Article III standing................................................................................4

i.   The plain terms of § 6103(d) do not provide for the disclosure of donor information .............................................................................................5

ii.  Even if § 6103(d) did provide plaintiffs with a statutory right to the return information of exempt organizations, that would not include the right to dictate to the IRS what information it collects.............................................8

iii. Plaintiffs' other arguments about informational injury are unavailing....11

2.  Plaintiffs' alleged diversion of resources does not give rise to standing....13

i.   Plaintiffs' alleged injuries are not sufficiently concrete ..........................13

ii.  Plaintiffs' claims fail as a matter of law ...................................................16

3.  Rev. Proc. 2018-38 does not unlawfully interfere with plaintiffs' ability to enforce their laws.................................................................................20

4.  Plaintiffs do not merit special solicitude .................................................23

B.  Plaintiffs lack statutory standing because they do not fall within the zone of interests of any statute they claim was violated ...................................24

C.  Congress has committed decisions about what information to collect from exempt organizations to IRS discretion..................................................26

D.  Rev. Proc. 2018-38 is not a legislative rule...................................................33

III.  CONCLUSION .........................................................................................41

# TABLE OF AUTHORITIES

**Federal Cases**

*Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931 (D.C. Cir. 1986) ...................................................................................11

*Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011) ...........................22

*Am. Inst. of Certified Pub. Accountants v. IRS*, 746 F. App'x 1 (D.C. Cir. 2018)..25

*Am. Med. Ass'n v. Reno*, 57 F.3d 1129 (D.C. Cir. 1995) ...............................32

*Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entertainment*, 659 F.3d 13 (D.C. Cir. 2011) ...........................................................................18

*Animal Legal Def. Fund v. Quigg*, 932 F.2d 920 (Fed. Cir. 1991).....................25

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) ..............4

*Blattner & Sons, Inc. v. Secr. of Labor*, 152 F.3d 1102 (9th Cir. 1998) .........38

*Bond v. United States*, 564 U.S. 211 (2011).................................................22

*Buschmann v. Schweiker*, 676 F.2d 352 (9th Cir. 1982) ...............................31

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) .........................................9

*Citizens for Responsibility & Ethics in Washington v. Exec. Office of President*, 587 F.Supp.2d 48 (D.D.C. 2008)................................................................12

*Citizens for Responsibility & Ethics in Washington v. F.E.C.*, 316 F.Supp.3d 349 (D.D.C. 2018) ..........................................................................................2

*Citizens for Responsibility & Ethics in Washington v. F.E.C.*, 904 F.3d 1014 (D.C. Cir. 2018) ...............................................................................................2

*Commission in Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) .................................................................................................17

*Del. Dep't of Natural Res. & Envt'l Control v. F.E.R.C.*, 558 F.3d 575 (D.C. Cir. 2009) ......................................................................................................23

*E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018) ...... 17, 25, 26

*E.J. Friedman v. U.S.*, 6 F.3d 1355 (9th Cir. 1993)......................................28

*FEC v. Akins*, 524 U.S. 11 (1998)..............................................................10

*Food & Water Watch v. Vilsack*, 79 F.Supp.3d 174 (D.D.C. 2015), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015) ................................................................................10

*Food & Water Watch v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015)....................15

*Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086 (9th Cir. 2016)..11, 12

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)................................. 16, 20

*Hemp Indus. Ass'n v. D.E.A.*, 333 F.3d 1082 (9th Cir. 2003) ..................................38

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977)................17

*JEM Broad. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994)..................................................34

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d
    1083 (9th Cir. 2010)...............................................................................................18

*Lexmark Int'l. v. Static Control Components*, 572 U.S. 118 (2014) ......................26

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ............................................................... 31, 32

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ..........................................................23

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S.
    209 (2012)...............................................................................................................25

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ................................................40

*N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233 (5th Cir. 2010)..............................14

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6 (D.C. Cir. 2011) .......................15

*Nat'l Taxpayers Union*, 68 F.3d. 1428 (D.C. Cir. 1995).........................................15

*Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir.
    1996) .......................................................................................................................18

*New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*, 208
    F.Supp.3d 142 (D.D.C. 2016).................................................................................10

*Nitro-Lift Techs. v. Howard*, 568 U.S. 17 (2012) .....................................................7

*Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796 (9th Cir. 2015) ..................26

*Oregon v. Legal Services Corp.*, 552 F.3d 965 (9th Cir. 2009)................. 22, 23, 24

*P.E.T.A. v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015) .........................11

*Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199 (2015).........................................32

*RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639 (2012)....................8

*Rainbow/PUSH Coal. v. F.C.C.*, 396 F.3d 1235 (D.C. Cir. 2005).........................16

*Reno-Sparks Indian Colony v. U.S. E.P.A.*, 336 F.3d 899 (9th Cir. 2003).............35

*Rutledge v. United States*, 517 U.S. 292 (1996) .....................................................21

*Service Women's Action Network v. Mattis*, 320 F.Supp.3d 1082 (N.D. Cal. 2018)
    .......................................................................................................................... 14, 18

*Southern California Edison Co. v. F.E.R.C.*, 770 F.2d 779 (9th Cir. 1985) ..........34

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) as revised (May 24, 2016) ....4

*Stanbury Law Firm v. IRS*, 221 F.3d 1059 (8th Cir. 2000) ....................................12

*Sturgeon v. Masica*, 768 F.3d 1066 (9th Cir. 2014), *vacated and remanded on
    other grounds sub nom. Sturgeon v. Frost*, 136 S. Ct. 1061 (2016)....................22

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016) (per curiam) .......................................... 20, 21, 22
*Webster v. Doe*, 486 U.S. 592 (1988) ............................................... 28, 29
*West Virginia ex rel. Morrisey v. United States Dep't of Health & Human Servs.*, 827 F.3d 81 (D.C. Cir. 2016) .......................................................21
*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018) ...............27
*Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016)......................................36
*Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220 (10th Cir. 2012)......................23

## State Cases

*Bullock v. Fox*, 2019 MT 50 ..........................................................24

## Federal Statutes

26 U.S.C. § 501 ............................................................... passim
26 U.S.C. § 511 ...................................................................7
26 U.S.C. § 527 ...................................................................2
26 U.S.C. § 6033 .............................................................. passim
26 U.S.C. § 6103 .............................................................. passim
26 U.S.C. § 6104 ......................................................... 3, 6, 8, 9
5 U.S.C. § 553 ........................................................... 37, 38, 39
5 U.S.C. § 701 ..................................................................38
5 U.S.C. § 706 ..................................................................38

## Federal Rules

Federal Rule of Civil Procedure 12 ............................................... 26, 41

## Federal Regulations

26 C.F.R. § 1.6033-2 .......................................................... passim

## Other Authorities

Revenue Procedure 2003-21 .......................................................37
Revenue Procedure 2011-15 .......................................................37
Revenue Procedure 2018-5 ........................................................19
Revenue Procedure 95-48 .........................................................38
Revevnue Procedure 96-10 ........................................................37

## I.     INTRODUCTION

The threshold question in this case is whether plaintiffs have standing to challenge the IRS's decision that non-501(c)(3) exempt organizations, although they still must report the amounts of donations and keep the names and addresses associated with these donations on file, no longer need to annually report these names and addresses ("donor information") to the IRS. Plaintiffs do not. As a factual matter, plaintiffs concede they never sought from the IRS the information they now wish to force the IRS to continue collecting. Plaintiffs invoke a statutory right to obtain donor information from the IRS, but they have no such right. Plaintiffs therefore have not been concretely injured by the IRS's decision.

Moreover, even if plaintiffs did have Article III standing, they would lack a statutory cause of action against the IRS to challenge its decision, and the IRS's decision would not be reviewable under the APA because decisions about whether exempt organizations must collect and hold information or submit it with their annual return are explicitly committed to the IRS's discretion. And even if plaintiffs could overcome all of those barriers to review, their claim would fail on the merits. Contrary to plaintiffs' argument, the APA's notice-and-comment procedures are not required because Rev. Proc. 2018-38 is not a legislative rule.

Plaintiffs spend much of the first part of their brief discussing the role of dark money in politics, but this case is not about campaign finance law or the

transparency of money in elections.[1] In fact, before Rev. Proc. 2018-38, the IRS

was required to manually redact donor information before releasing exempt

organizations' tax returns to the public because federal law prohibits public

disclosure of donor information filed with the IRS, except in the case of private

foundations and political organizations described in § 527.  Moreover, even if

plaintiffs had actually sought and received the donor information from the IRS,

they too would have been prohibited from publicly disclosing this information, and

from using this information to enforce campaign finance law. *See* 26 U.S.C.

§ 6104(c)(3) (donor information could have been disclosed to states only "for the

purpose of, and only to the extent necessary in, the administration of State laws

regulating the solicitation or administration of the charitable funds or charitable

assets of such organizations").

---

[1] For a recent case that did address the issue of what donor information to § 501(c)(4) organizations can be made available to the public*, see Citizens for Responsibility & Ethics in Washington v. F.E.C.*, 316 F.Supp.3d 349 (D.D.C. 2018) (vacating a regulation that had narrowed the obligation of organizations, including § 501(c)(4) organizations, to disclose, ultimately to the public, the "identifying information for donors of more than $200 for all contributions received, which contributions, by definition, are intended to influence any election for Federal office") (citations and quotation marks omitted); *Citizens for Responsibility & Ethics in Washington v. F.E.C.*, 904 F.3d 1014 (D.C. Cir. 2018) (denying motion to stay pending appeal).

This case is about whether the Court should radically expand states' standing to sue the federal government to allow plaintiffs to challenge a discretionary tax administration decision with which they have only a general grievance. It should not.

## II.   ARGUMENT

Although plaintiffs' motion narrows their case to assert only a procedural injury under the APA, they still must establish that they have suffered an Article III injury that gives them constitutional standing. They have failed to do so.

Moreover, even if plaintiffs had met their burden to establish constitutional standing, they have not shown that they fall within the zone of interests of a statute whose violation forms the gravamen of their complaint. Rev. Proc. 2018-38 is also not reviewable under the APA because it reflected the IRS's exercise of its statutory discretion to determine what information to collect from exempt organizations. Finally, even if each of those independent bars to review could be overcome, the revenue procedure is not a legislative rule and the APA's notice-and-comment procedures therefore do not apply.

### A.   Plaintiffs lack Article III standing

Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing the elements of constitutional standing. *Spokeo, Inc. v. Robins*, 136 S.

Ct. 1540, 1547 (2016) as revised (May 24, 2016). At the motion to dismiss stage, the plaintiff must "clearly ... allege facts demonstrating each element." *Id.* (internal quotation marks omitted). At the summary judgment stage, these facts must be set forth by affidavit or other evidence. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1178 (9th Cir. 2002).

Plaintiffs claim that three different alleged injuries provide them with standing: (1) an informational injury to their statutory right to information; (2) the diversion of their resources caused by the IRS's unlawful action; and (3) the IRS's unlawful interference with their ability to enforce their laws. None of these claims has merit, and plaintiffs lack Article III standing.

## 1.     Plaintiffs have suffered no informational injury that would give rise to Article III standing

The principal injury that plaintiffs claim gives them Article III standing is informational injury. But their alleged informational injury is not based on any concrete claim that information the IRS previously provided to them is no longer being provided. To the contrary, plaintiffs concede that they were not receiving donor information from the IRS when the IRS decided to cease collecting it as a matter of course. Plaintiffs thus claim only that they want the option to obtain donor information from the IRS in the future, if they were to request it. Plaintiffs acknowledge that such a hypothetical claim of informational injury may constitute

4

an Article III injury only "where a plaintiff has a statutory right to obtain that information." (Brief, 26). Plaintiffs argue that 26 U.S.C. § 6103(d) provides them with such a statutory right, but this argument fails for a number of reasons.

### i. The plain terms of § 6103(d) do not provide for the disclosure of donor information

First, the plain language of § 6103(d) does not authorize the disclosure of donor information to states. This section provides:

> Returns and return information with respect to taxes imposed by chapters 1, 2, 6, 11, 12, 21, 23, 24, 31, 32, 44, 51, and 52 and subchapter D of chapter 36 shall be open to inspection by, or disclosure to, any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws….

Barring unusual circumstances that would cause an exempt organization to be subject to a tax imposed by one of these chapters and donor information to be relevant to those taxes, the names and addresses of donors to organizations exempt from tax is not information "with respect to taxes imposed" by any of the Code chapters named in § 6103(d). Disclosure of donor information by the IRS to states is therefore not authorized by § 6103(d). Consistent with this, the agreements that both Montana and New Jersey entered into with the IRS under § 6103(d) do not provide for the disclosure of Form 990 series returns or return information (which is where donor information would have been found), other than for Forms 990-T,

Exempt Organization Business Income Tax Returns (which do not contain donor information). *See* Grimes Declaration, Dkt. 32-1, ¶¶7-8.[2]

Plaintiffs' argument to the contrary is puzzling and self-contradictory. Plaintiffs claim that donor "information is readily encompassed within [§ 6103(d)'s] plain language" because § 501(c) is found in chapter 1. (Brief, 35). But, with the exception of unrelated business income under § 511 (reported on the Form 990-T), that chapter, including § 501, does not impose taxes on exempt organizations; rather, as plaintiffs themselves go on to note, that section actually exempts these organizations from taxes. (*Id.*). Plaintiffs do not explain how a section that *exempts* organizations from taxes transforms these organizations' donor information into information "with respect to taxes *imposed*" by chapter 1, simply by virtue of being found in chapter 1.[3] It does not.

Instead of grappling with this fatal flaw in their logic, plaintiffs simply ignore it and proceed to emphasize that donor information qualifies as "returns" or "return information" as those terms are defined in § 6103(b). (Brief, 35-37). While this is true, it is wholly irrelevant. Defendants do not dispute that any donor

---

[2] Disclosures of this information may be made under § 6103(c) or § 6104(c), but neither state has an agreement under these sections. *Id.* ¶¶2-5.
[3] As a general matter, Chapter 1 imposes certain income taxes on individuals and organizations.

6

information collected by the IRS would potentially be returns or return information under § 6103(b). But the IRS is not authorized by § 6103(d) to disclose to states all the § 6103(b) returns or return information it collects, only that which is "with respect to taxes imposed" by the chapters named in § 6103(d).

In contrast to § 6103(d), § 6104(c) does specifically address disclosure of the returns and return information of exempt organizations to states. Plaintiffs, however, would have the Court read this section as simply an "extra *permissive* authorization," rendered superfluous in all but those unknown[4] circumstances in which "there may be information covered by § 6104(c) not covered by § 6103(d)." (Brief, 38). To support this strained reading plaintiffs urge the Court not to apply "the ancient interpretive principle that the specific governs the general," *Nitro-Lift Techs. v. Howard*, 568 U.S. 17, 21 (2012), because they claim this principle "applies only '[w]hen two statutes come into conflict.'" (Brief, 37-38). But plaintiffs are mistaken. "[T]he canon has full application as well to statutes such as the one[s] here, in which a general authorization and a more limited, specific authorization exist side-by-side. There the canon avoids not contradiction but the

_____

[4] These circumstances are unknown because it is difficult to see how *any* return information would not be swept into plaintiffs' broad reading of § 6103(d) where even the return information of organizations exempt from tax is somehow information with respect to taxes imposed by certain chapters of the Code.

superfluity of a specific provision that is swallowed by the general one, violating the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'" *RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (internal quotation marks omitted). The Court should not follow plaintiffs' results-oriented reading of the plain language of § 6103(d) that would render § 6104(c) superfluous.

> **ii.     Even if § 6103(d) did provide plaintiffs with a statutory right to the return information of exempt organizations, that would not include the right to dictate to the IRS what information it collects**

Even if plaintiffs were to have a statutory right to tax-exempt returns and return information under § 6103(d), they misconstrue the nature of that right. To the extent § 6103(d) creates a right to obtain information, it is only a right to obtain the returns and return information that the IRS collects. It is not a right to dictate *what* information the IRS collects.

Although plaintiffs deny that they are effectively claiming a right to dictate what information the IRS collects, (Brief, 34), this is a necessary premise of plaintiffs' claim that they have a statutory right to obtain donor information. There is no statutory requirement for the IRS to collect the tax-exempt donor information

8

at issue, and the IRS obviously cannot provide what it does not collect.[5] Thus, even if plaintiffs were to have a statutory right to tax-exempt *returns and return information* under § 6103(d), they cannot assert a right to donor information in particular, without also claiming that the IRS is required to collect this particular information on returns.  Because plaintiffs have no such statutory right to require the IRS to collect donor information, they cannot have a statutory right to obtain it.

Plaintiffs seek to avoid this reality by claiming that they are merely "seek[ing] to enforce the APA's procedural requirements." (Brief, 34-35). But even though plaintiffs are alleging a procedural injury, they are still required to establish an Article III injury, which requires an "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548-49 (internal quotation omitted) (a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III"); *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (Article III injury still required in order to assert

---

[5] Section 6103(d) only authorizes the IRS to disclose to states "[r]eturns and return information," but "returns" only include those that are "filed with the" IRS, and "return information" only includes information that is "received by, recorded by, prepared by, furnished to, or collected by" the IRS. 26 U.S.C. § 6103(b)(1) and (2)(A).

procedural APA claim). As discussed above, plaintiffs have no legally protected

interest in receiving donor information under § 6103(d), and therefore suffered no

Article III injury when the IRS discontinued the collection of information that

plaintiffs were not even receiving from the IRS in the first place.

Plaintiffs' claim of informational injury is based not only on an alleged right

under § 6103(d) to obtain whatever information the IRS collects as returns and

return information, but also on an alleged right to ensure that donor information is

among that information. They lack either right, and therefore lack an informational

injury that gives rise to Article III standing.[6]

---

[6] Plaintiffs cite *FEC v. Akins*, 524 U.S. 11, 21 (1998), for the proposition that a plaintiff was injured by its inability to obtain certain campaign finance information that was required to be made public under plaintiff's own "view of the law." (Brief, 26). But the dispute in *Akins* was not about whether the statute required information to be made public, as it undisputedly did, but whether a certain organization qualified as a "political committee" under the relevant statute. Here, plaintiffs are only injured if § 6103(d) "actually *does* require" the IRS to both collect this information and turn it over to plaintiffs (had plaintiffs requested it), which it does not. *New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*, 208 F.Supp.3d 142, 156-7 (D.D.C. 2016) (also citing *Akins*); *see also Am. Farm Bureau v. E.P.A.,* 121 F.Supp.2d 84, 97 (D.D.C. 2000) (explaining that "[i]nformational standing arises 'only in very specific statutory contexts' where a statutory provision has 'explicitly created a right to information'" (quoting *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 502 (D.C. Cir. 1994))); *Food & Water Watch v. Vilsack*, 79 F.Supp.3d 174, 197 (D.D.C. 2015), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015) (circumstances under which informational standing arises are "exceedingly limited" as a practical matter).

### iii.   Plaintiffs' other arguments about informational injury are unavailing

Recognizing that they have never before sought the information from the IRS that they are now seeking to force the IRS to continue to collect, plaintiffs argue at length that informational injury can give rise to standing even when the alleged injury is only an impairment to *future* lawful access to information. (Brief, 26-33). Even if true, the threatened future flow of information still must be that to which "plaintiffs have a statutory right," as plaintiffs acknowledge, (Brief, 28), and plaintiffs lack such right, as discussed above. Moreover, all the informational injury cases discussed by plaintiffs in this context involve FOIA requests, and it is not at all apparent that this doctrine applies outside of the FOIA realm.[7] *See e.g.*, *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) (introducing the test for when "a pattern or practice *of FOIA violations*" may give rise to an Article III informational injury) (emphasis added). Finally, in those FOIA cases where courts did find standing, it was because the plaintiffs either had

---

[7] The two non-FOIA cases cited by plaintiffs in this context, *P.E.T.A. v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015), and *Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931 (D.C. Cir. 1986), were not informational injury cases in which a court addressed whether a statutory right to information gave rise to standing, but were rather *Havens Realty* diversion-of-resources cases, discussed below.

FOIA requests pending or evidence of intent to file requests in the future.[8] *See,*

*e.g.*, *Citizens for Responsibility & Ethics in Washington v. Exec. Office of*

*President*, 587 F.Supp.2d 48, 60–61 (D.D.C. 2008); *Hajro*, 811 F.3d at 1106. Here,

of course, plaintiffs do not receive donor information and have not submitted

evidence that they intend to obtain donor information from the IRS if the IRS were

to continue collecting it: New Jersey intends to continue to collect it from the

exempt organizations themselves, just as it did before Rev. Proc. 2018-38, and

Montana has submitted no evidence of any intent to ever request this information

from the IRS.

     Finally, plaintiffs are advocating for a dramatic expansion of standing under

the informational injury doctrine. Plaintiffs are not claiming an informational

injury based upon the alleged impairment of their ability to obtain government

information but of their ability to obtain the information *of third parties* through

the IRS. Plaintiffs could collect this information directly from the third parties.

---

[8] A FOIA request for donor information would be an improper avenue to obtain this information. *See, e.g.*, *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1062 (8th Cir. 2000) ("virtually all tax documents are excluded from release by precisely the type of statutory exemption mentioned in § 552(b)(3). Specifically, § 6103(a) of the tax code requires that all tax returns and return information be kept confidential unless some other specific provision of the code permits release.").

Plaintiffs have cited no case for the remarkable proposition that informational injury could possibly consist solely of impairment to a governmental avenue for obtaining information that is available to a plaintiff through other means.[9]

### 2.   Plaintiffs' alleged diversion of resources does not give rise to standing

Plaintiffs claim that Rev. Proc. 2018-38 has caused them to expend resources that they would have spent in other ways and that this constitutes a "diversion-of-resources" injury sufficient to support Article III standing. However, plaintiffs have failed to sufficiently demonstrate a concrete drain on their resources. Plaintiffs' "diversion-of-resources" claim also fails as a matter of law.

### i.   Plaintiffs' alleged injuries are not sufficiently concrete

Plaintiffs' claims regarding diversion of resources fail to sufficiently identify a concrete drain on their resources. With respect to Montana, plaintiffs make only abstract and conclusory allegations about how the MTDOR will expend "staff time and resources" to determine how to proceed in light of Rev. Proc. 2018-38. Walborn Decl. ¶¶14-15, 17. Plaintiffs "have not identified any specific projects that the [MTDOR] had to put on hold or otherwise curtail in order to respond to" Rev. Proc. 2018-38. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir.

---

[9] This is yet another difference between this case and the FOIA cases cited by plaintiffs.

2010). "Instead, Plaintiffs have only [implicitly] conjectured that the resources that" MTDOR alleges it will devote to determining how to respond to Rev. Proc. 2018-38 "could have been spent on other unspecified [MTDOR] activities." *Id.* at 239; *see also*, *e.g.*, *Service Women's Action Network v. Mattis*, 320 F.Supp.3d 1082, 1100 (N.D. Cal. 2018) (while plaintiff "alleges it has had to divert resources to address the inequities and harms caused by the allegedly unconstitutional DoD policies, the allegations are conclusory [and plaintiff] does not provide any specificity in describing (1) from what and (2) to what its resources have been reallocated"). Such conclusory and conjectural allegations do not demonstrate a concrete injury sufficient to support Article III standing.

With respect to New Jersey, its own agency proposal did not identify any costs to the state to update its regulations to clarify that exempt organizations still must submit donor information to the state, even though New Jersey law requires it to do so. Plaintiffs ask the Court to ignore that fact and rely instead on a declaration with conclusory allegations about how New Jersey has expended and will expend resources to update these regulations and to educate charitable organizations. But again, these "allegations are conclusory [and plaintiffs] do not provide any specificity in describing" from where and to what its resources have

14

been allocated, and these allegations therefore do not demonstrate a sufficiently concrete injury.[10] *Id.*

Plaintiffs' conclusory allegations are further belied by the trivial effect Rev. Proc. 2018-38 has had on plaintiffs. Before Rev. Proc. 2018-38 was issued, plaintiffs did not receive donor information from the IRS. Plaintiffs only received donor information by asking tax-exempt organizations to provide the information to them. Rev. Proc. 2018-38 did not alter the requirement for tax exempt organizations to maintain donor information. Nothing in Rev. Proc. 2018-38 prevents plaintiffs from continuing to obtain donor information by asking organizations to provide the information to them. Thus, at most, plaintiffs must now ask for a list of donor information rather than asking for "Schedule B"—a trivial difference.

---

[10] Moreover, with respect to New Jersey's alleged educational costs, "an organization does not suffer an injury in fact where it 'expend[s] resources to educate its members and others' unless doing so subjects the organization to 'operational costs beyond those normally expended.'" *Food & Water Watch v. Vilsack*, 808 F.3d 905, 919–20 (D.C. Cir. 2015) (quoting *Nat'l Taxpayers Union*, 68 F.3d. 1428, 1434 (D.C. Cir. 1995)); *see also Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (organization's expenditures must be for "'operational costs beyond those normally expended' to carry out its advocacy mission" (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1434)).

###### ii.     Plaintiffs' claims fail as a matter of law

Besides lacking the necessary specificity and concreteness, plaintiffs'

"diversion-of-resources" claims fail as a matter of law. First, plaintiffs have cited

no case as precedent for the proposition that a state can demonstrate an Article III

injury under the "diversion-of-resources" body of law, let alone that a state can do

so when it voluntarily decides to reallocate resources in response to a change in

federal law or policy (or to devote staff time to determining whether and how to

reallocate resources). Moreover, even if the "diversion-of-resources" strain of

standing could apply to states or state agencies, plaintiffs do not meet the

requirements, particularly the one that requires that their missions must have been

frustrated by the IRS.

The "diversion-of-resources" line of cases all stem from *Havens Realty*

*Corp. v. Coleman*, 455 U.S. 363 (1982). In *Havens Realty*, the "Supreme Court

established that an organization has constitutional standing to challenge the

discriminatory practices of a defendant if those practices adversely affect the

activities the person or organization undertakes to fight discrimination."

*Rainbow/PUSH Coal. v. F.C.C.*, 396 F.3d 1235, 1240 (D.C. Cir. 2005). Courts

have expanded the *Havens Realty* line of cases to encompass plaintiffs beyond the

fair housing organization at issue in that case, to include organizations such as

16

labor advocacy groups, civil rights groups, and legal services groups. *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241–42 (9th Cir. 2018). In all cases the issue was whether the group had a form of standing known as associational or organizational standing. *Id.* Plaintiffs have cited no law to support the proposition that states or state agencies can have associational or organizational standing. The Supreme Court has allowed a state agency to assert associational standing, but only because it had the "qualities often found in private associations." *Commission in Central Delta Water Agency v. United States*, 306 F.3d 938, 951 n.8 (9th Cir. 2002) (discussing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977)). The MTDOR and State of New Jersey are not remotely similar to the quasi-private associations found to be capable of asserting organizational standing in *Hunt* and *Central Delta Water Agency*,[11] and plaintiffs therefore cannot assert standing under the "diversion-of-resources" line of organizational standing cases.

---

[11] "The plaintiff in *Hunt* was a state commission formed to support the apple-growing industry; the Supreme Court concluded that 'the Commission, while admittedly a state agency, for all practical purposes, performs the functions of a traditional trade association representing the Washington apple industry.'" *Central Delta Water Agency*, 306 F.3d at 951 n.8 (quoting *Hunt*, 432 U.S. 344). The court in *Central Delta Water Agency* found that the plaintiff water agencies were "analogous to the Apple Commission in *Hunt*." *Id.*

17

But even if plaintiffs could assert organizational standing under this line of cases, they do not meet the requirements. In the Ninth Circuit, "an organization suing on its own behalf can establish an injury when it suffered both a diversion of its resources *and* a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (emphasis added); *see also Service Women's Action Network*, 320 F.Supp.3d at 1099. Assuming for the sake of argument that plaintiffs had actually demonstrated a specific and concrete diversion of resources, they have not, and cannot, demonstrate that their mission has been frustrated by Rev. Proc. 2018-38.

"[A]n organization seeking to establish *Havens* standing must show a 'direct conflict between the defendant's conduct and the organization's mission.' *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). If the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission, we have found it 'entirely speculative' whether the challenged practice will actually impair the organization's activities. *Id.*" *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entertainment*, 659 F.3d 13, 25 (D.C. Cir. 2011). Plaintiffs, at best, have alleged that Rev. Proc. 2018-38 will affect their activities, but there is no allegation that Rev. Proc. 2018-38 is in direct conflict with their mission. New Jersey received donor information directly from

18

exempt organizations before Rev. Proc. 2018-38, not the IRS, and will continue to do so after Rev. Proc. 2018-38. Montana, which also never received donor information from the IRS prior to Rev. Proc. 2018-38, will also continue to have the option to receive this information directly from exempt organizations after Rev. Proc. 2018-38.

It is worth noting here the contradiction inherent in MTDOR's claims that it previously had no need to seek donor information directly from exempt organizations because it had trusted and relied upon the IRS when it collected donor information. If MTDOR relied on the IRS without knowing how or if the IRS ever made use of donor information, it cannot plausibly claim now that it does not trust the very same IRS when it has determined that it does not need the "personally identifiable information of donors to be reported on Schedule B . . . in order for it to carry out its responsibilities." Rev. Proc. 2018-38. Additionally, MTDOR claims to rely on the "IRS's exemption determinations when making its own exemption determinations under state law." (Brief, 13). MTDOR appears unaware, however, that most exempt organizations, including § 501(c)(4) organizations, "may choose to seek a determination letter recognizing exemption under § 501 by filing Form 1024, but are not required to do so except in certain cases." Rev. Proc. 2018-5, Section 4.02(3). And even those that do seek an

19

exemption determination and file the Form 1024 (or Form 1024-A) do not disclose donor information, as the forms do not require such information. Thus, the IRS's exemption determinations, and by extension MTDOR's reliance on these determinations, are wholly unaffected by the discontinuation of the collection of donor information on annual information returns.

There is perhaps good reason why the "diversion-of-resources" line of cases has never been applied to states, for it would seem to allow a state, anytime it had a general grievance with a change in federal law or policy, to bootstrap its way to standing by diverting resources to replicate the effect of the prior law or policy.[12] The Court should not expand the diversion-of-resources line of cases in such a way. Simply put, plaintiffs lack Article III standing under this theory.

### 3. Rev. Proc. 2018-38 does not unlawfully interfere with plaintiffs' ability to enforce their laws

In a final attempt to manufacture standing, plaintiffs allege that Rev. Proc. 2018-38 unlawfully "hinders the plaintiffs' ability to enforce their legal codes by

---

[12] *Texas v. United States*, 809 F.3d 134, 194–95 (5th Cir. 2015), cited by plaintiffs in another context and section, was also not a *Havens Realty* diversion-of-resources case. Nor was standing in that case premised on Texas's voluntary diversion of resources in response to a change in federal policy. Rather, in that case the Fifth Circuit found that DAPA forced Texas to either incur the costs of issuing driver's licenses to roughly 500,000 undocumented immigrants, or to change its laws.

depriving them of relevant information to which they are statutorily entitled."
(Brief, 44). However, as discussed above, plaintiffs are not statutorily entitled to
this information, and Rev. Proc. 2018-38 therefore did not unlawfully interfere
with their ability to enforce their laws.

Plaintiffs cite no case that supports their "extraordinary claim" that "when
the federal government abandons enforcement of a federal statute, leaving States
with the responsibility," that this "creates an injury-in-fact," much less for the even
more extraordinary claim here that an injury-in-fact is created when the IRS
abandons the collection of information that plaintiffs had never even sought or
received from the IRS, leaving plaintiffs with the discretion to collect such
information on their own. *West Virginia ex rel. Morrisey v. United States Dep't of
Health & Human Servs.*, 827 F.3d 81, 83-84 (D.C. Cir. 2016).

Of the cases that plaintiffs cite, only *Texas v. United States*, 809 F.3d 134
(5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016) (per
curiam)[13] comes remotely close to supporting the unprecedented expansion of state

---

[13] That *Texas* was affirmed by an equally divided Supreme Court does not render
that decision's analysis of state standing controlling here. Such affirmances,
including any implicit conclusion on standing, are not precedential. *Rutledge v.
United States*, 517 U.S. 292, 304 (1996); *cf. Am. Elec. Power Co. v. Connecticut*,

standing that plaintiffs urge here. But in *Texas* the Fifth Circuit found that DAPA "would enable at least 500,000 illegal aliens in Texas" to become eligible for driver's licenses, and that Texas was thus faced with the forced choice of changing its laws or incurring a loss of several million dollars. *Texas*, 809 F.3d at 155. No similar facts are present here, where Rev. Proc. 2018-38 has not interfered in any way with plaintiffs' ability to pursue their own policies. *See also Sturgeon v. Masica*, 768 F.3d 1066, 1075 (9th Cir. 2014), *vacated and remanded on other grounds sub nom. Sturgeon v. Frost*, 136 S. Ct. 1061 (2016) (finding no standing based upon Alaska's allegation that NPS regulations had "directly interfered with Alaska's ability as a sovereign to manage and regulate its land and waters" when there was "no conflict between NPS regulations and [Alaska's] own state statutes and regulations"); *Oregon v. Legal Services Corp.*, 552 F.3d 965, 973 (9th Cir. 2009) (abrogated on other grounds by *Bond v. United States*, 564 U.S. 211 (2011)) (finding no standing based on Oregon's allegation that LSC's regulations had interfered with its ability to make policy, when there was "no dispute over Oregon's ability to regulate its legal services program, and no claim that Oregon's laws have been invalidated as a result of the LSC restrictions").

564 U.S. 410, 420 (2011) (proceeding to merits after affirming standing by an equally divided court).

### 4.    Plaintiffs do not merit special solicitude

Even if the Court were to grant plaintiffs some measure of special solicitude, it would not change the fact that plaintiffs still lack standing. *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1238 (10th Cir. 2012) (noting the "lack of guidance on how lower courts are to apply the special solicitude doctrine to standing questions," but that "[t]his much, however is clear: '[t]his special solicitude does not eliminate the state petitioner's obligation to establish a concrete injury, as Justice Stevens' opinion amply indicates'") (quoting *Del. Dep't of Natural Res. & Envt'l Control v. F.E.R.C.*, 558 F.3d 575, 579 n.6 (D.C. Cir. 2009)). The Court "need not determine the parameters of 'special solicitude' in this case," because, as discussed above, plaintiffs have failed to demonstrate a concrete injury and lack Article III standing as a matter of fact and law. *Id.*; *Oregon*, 552 F.3d at 970.

Moreover, contrary to plaintiffs' contention, the "assertion of procedural rights by state government entities" does not automatically entitle them to "special solicitude" in the standing analysis. (Brief, 25, *citing Massachusetts v. EPA*, 549 U.S. 497, 520 (2007)). Rather, the plaintiffs must be seeking to protect, *as sovereign states*, sovereign or quasi-sovereign interests that are "sufficiently concrete to create an actual controversy between the State and the defendant," such

23

as those "involving the abatement of public nuisances, such as global warming,

flooding, or noxious gases." *Oregon*, 552 F.3d at 970 (internal quotations omitted).

None of plaintiffs have established they are seeking to protect such interests.

Additionally, whatever the Montana Supreme Court may have held with respect to

Governor Bullock's capacity to assert his office's interests in court, it did not hold

that Governor Bullock (or the MTDOR) had the capacity to assert the State of

Montana's sovereign or quasi-sovereign interests. *Bullock v. Fox*, 2019 MT 50, ¶

41 (finding that the Governor had standing in that case, but also noting that the

Governor did "not petition [the] Court on behalf of a vague and general state

interest, but in his official capacit[y] as Governor").[14]

### B.   Plaintiffs lack statutory standing because they do not fall within the zone of interests of any statute they claim was violated

Plaintiffs argue that because they are now alleging only a procedural injury

under the APA that they need not establish that they come within the zone of

interests of a statute they claim was violated. (Brief, 48). In other words, they

argue that as long as they come within the zone of interests of any substantive

---

[14] Plaintiffs misrepresent defendants' position on this point. Defendants never argued that "the Governor of Montana and the Montana Department of Revenue 'have not established' that they have sufficient 'legal authority' to assert standing in federal court," as plaintiffs claim. (Brief, 45 n.3). Rather, defendants argued that the Montana plaintiffs had not established that they had the legal authority to assert "Montana's quasi-sovereign and sovereign interests." (US Brief, 19).

statute, in this case § 6103, they have a cause of action against the IRS under the APA, "without alleging a violation of the [substantive] section itself." (*Id.*). This is wrong as a matter of law.

For APA claims, "the relevant zone of interests is not that of the APA itself," but rather "'the zone of interests to be protected or regulated *by the statute that [the plaintiff] says was violated.*" *E. Bay Sanctuary Covenant*, 909 F.3d at 1244 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012)) (emphasis added); *Am. Inst. of Certified Pub. Accountants v. IRS*, 746 F. App'x 1, 7 (D.C. Cir. 2018) ("The relevant statute is the statute defining the zone of interests to be protected or regulated, specifically, the substantive provisions of the relevant statute, *the alleged violations of which serve as the gravamen of the complaint*. Not surprisingly, therefore, in all the zone of interest decisions the AICPA cites, the relevant zone of interest was defined by a substantive statute, not by the APA.") (emphasis added, quotation marks and citations omitted); *Animal Legal Def. Fund v. Quigg*, 932 F.2d 920, 937 (Fed. Cir. 1991) ("Appellant would have us consider the APA itself as a 'relevant statute,'" but "[a]s defined in *Lujan*, 110 S.Ct. at 3187, [t]he relevant statute is, of course, *the statute whose violation is the gravamen of the complaint*") (emphasis added).

25

Plaintiffs' claim appears to be that the IRS somehow violated § 6033 in issuing Rev. Proc. 2018-38. They cannot simply choose another statute, no matter how related or unrelated to that claim, to establish that they fall within its zone of interests, and claim that this gives them the cause of action to bring an APA notice-and-comment claim. They must establish that they come within the "zone of interests to be protected or regulated by the statute that [they say] was violated." *E. Bay Sanctuary Covenant*, 909 F.3d at 1244 (internal quotation omitted). They have failed to do so, and therefore lack "statutory standing."[15]

### C.     Congress has committed decisions about what information to collect from exempt organizations to IRS discretion

Through the broad language and overall structure of § 6033, Congress has given no meaningful standard for the courts to judge the IRS's decisions about what information the IRS deems necessary to determine if tax-exempt organizations continue to meet the criteria that allow them tax-exempt status.

---

[15] "Statutory standing" does not implicate the Court's subject-matter jurisdiction, and plaintiffs' claims should therefore be dismissed on these grounds pursuant to Fed. R. Civ. P. 12(b)(6). *Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) (citing *Lexmark Int'l. v. Static Control Components*, 572 U.S. 118 (2014) and noting that "'statutory standing' does not implicate our subject-matter jurisdiction").

The present situation is unlike cases in which courts have found judicial review available because the relevant statute gave objective factors a court could use to judge the agency's exercise of discretion. S*ee Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 371–72 (2018) (finding that judicial review was available because the Endangered Species Act requires the agency "to consider economic impact and relative benefits" in deciding whether to designate an area as "critical habitat"). Here, Congress has given no discrete, objective factors to guide any court in attempting to review the IRS's choices as to what information it needs (and what information it does not need) on the information returns of exempt organizations. The closest that Congress comes to giving any standard is that it authorizes the IRS to seek "such other information *for purposes of carrying out the internal revenue laws as the Secretary may require*." 26 U.S.C. § 6033(b)(16) (emphasis added). "[F]or purposes of carrying out the internal revenue laws" is so broad as to constitute no meaningful standard, and Congress gives no discrete, objective factors by which to judge it. Reinforcing the breadth of discretion, the statute also leaves to the Secretary's discretion as what he "may require" to accomplish that broad purpose. Similarly, Congress has given the Secretary the power to relieve certain exempt organizations from filing an information return "*where he determines* that such filing is not necessary *to the*

27

*efficient administration of the internal revenue laws.*" 26 U.S.C. § 6033(a)(3)(B) (emphases added). Again, Congress has placed squarely in the agency's domain the determination of what information is or is not necessary to the efficient administration of the internal revenue laws.[16]

Although plaintiffs correctly point out that discretionary language alone may not make agency action unreviewable, this is not a situation in which Congress has provided simply that the IRS "may" engage in certain actions. In § 6033, Congress carefully ties the action that the IRS may engage in (i.e., seeking additional information from tax-exempt organizations, as well as relieving any of those groups from filing the whole or any part of the annual information return) to *the Secretary's* determination of what is required to carry out the internal revenue laws and *the Secretary's* determination of what information is necessary to the efficient administration of the internal revenue laws. As in *Webster v. Doe*, 486 U.S. 592, 600 (1988), this type of language would provide no basis for a reviewing court to assess the IRS's determination, "[s]hort of permitting cross-examination of the

_____

[16] When examining similarly broad and deferential language, the 9th Circuit found in another setting that Congress had committed IRS action to the agency's discretion. *See E.J. Friedman v. U.S.*, 6 F.3d 1355, 1359 (9th Cir. 1993) (finding that statute, which provided that IRS may discharge property from liens if the IRS determines the United States' interest in the property has no value, committed the IRS decision to its discretion and thus was not subject to judicial review).

[Secretary]" concerning his views of what information is most important and beneficial to the efficient administration of the internal revenue laws. When faced with similarly structured language regarding employee termination decisions under § 102(c) of the National Security Act, the Supreme Court found that Congress's choice of language "fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review." *Webster*, 486 U.S. at 600.

Here, as was the situation in *Webster*, Congress has given no meaningful standard by which a reviewing court could judge the agency's exercise of discretion.[17] And although plaintiffs argue that the agency's own regulations may nonetheless provide a suitable standard for a court to apply, the regulation at issue here reserves the same discretion to the IRS that Congress conveyed in the statute. By regulation, the Secretary delegated to the IRS Commissioner the discretion to "relieve any organization or class of organizations … from filing, … in part the annual return required by this section." 26 C.F.R. § 1.6033-2(g)(6). That relief

---

[17] Indeed, given the breadth and structure of the language that Congress uses in § 6033, any judicial review of the IRS's determinations of what information it needs, or does not need, for the efficient enforcement of the internal revenue laws necessarily would entail a second-guessing of the IRS's enforcement priorities. That subject matter is not an appropriate arena for judicial review.

authority is entirely consistent with the statute, which (1) specifies that "such other information" can be prescribed by regulation *or forms*, and (2) expressly and solely grants the Secretary the authority to "relieve any organization … from filing such a return where he determines that such filing is not necessary to the efficient administration of the internal revenue laws." 26 U.S.C. § 6033(a)(3)(B). Rev. Proc. 2018-38 is an exercise of both grants of broad discretion, and is separately authorized by each one: (i) it (along with its follow-on revised Form 990) prescribes by "form[]" which "other information" exempt organizations must provide,[18] and (ii) it is an exercise of the Secretary's broad discretion to "relieve any organization … from filing such a return." The regulation gives no more meaningful standard by which a court may judge the IRS's exercise of discretion than does the statute.

Finally, plaintiffs suggest that the process of notice-and-comment rulemaking may provide a meaningful standard to judge the agency's exercise of discretion even when Congress has committed the action at issue fully to the agency's discretion. The cases that plaintiffs cite for that proposition do not carry

---

[18] Under the authority granted in both the statute and the regulation, the IRS could have effected the change in information solely through the revised Form 990, including its accompanying instructions. By issuing Rev. Proc. 2018-38 first, the IRS simply gave taxpayers advance notice of the upcoming change in the form.

the heavy weight plaintiffs attempt to foist upon them. In *Buschmann v. Schweiker*, 676 F.2d 352 (9th Cir. 1982), the Ninth Circuit considered the argument of the Secretary of Health, Education and Welfare that "good cause" exempted the agency from subjecting a challenged rule to notice and comment. Under the APA, notice and comment are not required "when the agency for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). In that context, the court's comments about the importance of the "procedural safeguards" of notice and comment make sense. But the good-cause exception to notice and comment is not at issue here. Additionally, and critically, whether Congress had committed the action in question by law to agency discretion was not at issue in *Buschmann*. There, the court had found that the agency's action did not exceed the authority granted by Congress and that the agency's action was not arbitrary and capricious. *Buschmann*, 676 F.2d at 355.

Likewise, *Lincoln v. Vigil*, 508 U.S. 182 (1993), neither discusses nor analyzes whether notice-and-comment procedures are required when Congress has committed agency action to agency discretion by law. Although plaintiffs correctly note that the decision separately found that the agency action in question was committed to discretion by law and that the agency action was not subject to

31

notice-and-comment procedures, Plaintiffs fail to note that the decision being

reviewed had ruled in the opposite manner as to each of those points. *Vigil*,

508 U.S. at 190, 195. To overrule the circuit court's decisions as to each of those

points, the Supreme Court necessarily had to address each of them separately. This

Court should decline plaintiffs' invitation to read more into the *Vigil* decision than

the Supreme Court actually discussed.[19]

---

[19] Some courts have read *Vigil* more broadly, pointing to an isolated clause in a
single sentence of the Supreme Court's opinion. The clause in question is in the
introduction to the Court's discussion of whether notice-and-comment rulemaking
was required: "We next consider the Court of Appeals's holding, *quite apart from
the matter of substantive reviewability*, that before terminating the Program the
Service was required to abide by the familiar notice-and-comment rulemaking
provisions of the APA, 5 U.S.C. § 553." *Vigil*, 508 U.S. at 195 (emphasis added).
In the context of that sentence, the highlighted language appears merely to describe
the Court of Appeals's holding. That reading makes the most sense, especially
given the lack of any other analysis or discussion of whether notice-and-comment
procedures are required when Congress has committed agency action to agency
discretion by law. Nonetheless, some courts have seized upon the clause
highlighted above to support the proposition that courts may review a rule for
procedural compliance regardless of whether the rule's substance is reviewable.
*See Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995). But the text of
the APA supplies no such exception to the principle that the provisions for judicial
review – which include review of agency action alleged to have been taken
"without observance of procedure required by law," 5 U.S.C. § 706(2)(D) – do not
apply when "agency action is committed to agency discretion by law." 5 U.S.C.
§ 701(a)(2). This Court should not expand APA review beyond what the APA
provides. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206-07 (2015)
(rejecting doctrine from the D.C. Circuit that imposed notice-and-comment
procedures in a situation when they were not required under the text of the APA).

Congress has invested the IRS with broad authority to determine what

information it deems necessary from exempt organizations to fulfill its tax

administration duties. Because this Court has no meaningful standard against

which to judge the IRS's decisions on that point, judicial review is unavailable, and

plaintiffs' claims must be dismissed.

### D. Rev. Proc. 2018-38 is not a legislative rule

Even if judicial review of Rev. Proc. 2018-38 were available, plaintiffs'

argument that it should have been subject to notice and comment still would fail.

Plaintiffs do not dispute that Rev. Proc. 2018-38 leaves the substantive tax law

governing tax-exempt organizations unchanged. Instead, their argument is that

Rev. Proc. 2018-38 is a legislative rule because it "amends the IRS's regulation

26 C.F.R. § 1.6033-2," which governs the information collected by the IRS to

evaluate compliance with those substantive laws. (Brief, 19). That argument is

entirely premised on a misreading of the regulation and misunderstanding of the

revenue procedure. Rev. Proc. 2018-38 is not a legislative rule because it is either

an interpretive or procedural rule and does not fit within the legal definition of a

legislative rule.

Notice-and-comment procedures are not required for "interpretive rules" or "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). Rev. Proc. 2018-38 qualifies as an interpretive rule because it interprets and clarifies the "other information" that § 6033(a)(1) allows the IRS to require. It also qualifies as a procedural rule because it does not change the substantive criteria that organizations must meet to maintain tax exemption; it merely changes the procedure the IRS will use to determine whether those organizations are complying with the law.

Rev. Proc. 2018-38 is a rule of IRS procedure or practice because it merely addresses the IRS's timing and process for collecting information that the IRS may use to determine compliance with substantive criteria that remains the same. *See Southern California Edison Co. v. F.E.R.C.*, 770 F.2d 779, 783 (9th Cir. 1985) (determining that changes in the rules of the Federal Energy Regulatory Commission impacting the process for rate approval, specifically "intervention, requests for refunds for interim rates and for final confirmation and approval," fit within the procedure or practice exception to the APA's notice-and-comment requirement); *JEM Broad. v. FCC*, 22 F.3d 320, 327 (D.C. Cir. 1994) (finding that FCC rules that required the dismissal of incomplete license applications without leave to amend were procedural and thus not subject to notice and comment

34

because they "did not change the *substantive standards* by which the FCC evaluates license applications") (emphasis in original).

As Rev. Proc. 2018-38 explains, organizations "must continue to collect and keep [donor names and addresses] in their books and records and to make [that information] available to the IRS upon request." As a result, that information will remain available to the IRS in the event the IRS deems it necessary. In other words, the information organizations must provide to the IRS is unchanged. What has changed is the procedure the IRS will use to collect it: whereas before the IRS collected the information as a matter of course from all qualifying organizations, it will now collect it on an as-needed basis. This change will have minimal impact on the covered organizations; they must continue to collect the same information from donors and be ready to provide that information to the IRS upon request.

Though it is sufficient that Rev. Proc. 2018-38 fits comfortably within either the "interpretive" or "procedure, or practice" exceptions to the notice-and-comment requirement, it is equally apparent that Rev. Proc. 2018-38 is *not* a legislative rule (also known as a substantive rule, *see Reno-Sparks Indian Colony v. U.S. E.P.A.*, 336 F.3d 899, 909 (9th Cir. 2003)). Legislative rules, for which the APA requires notice and comment, "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *L.A.*

35

*Closeout, Inc. v. Dep't of Homeland Sec.*, 513 F.3d 940, 942 (9th Cir. 2008) (citations omitted). Rev. Proc. 2018-38 does not alter the rights or obligations of the organizations it addresses. Again, the substantive law and standards that the organization must meet to remain tax-exempt are unchanged, regardless of what information the organizations are required to report on their returns.

The inapplicability of the Ninth Circuit's legislative rule test makes matters still clearer. The Ninth Circuit determines an agency rule to be legislative "(1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (citations omitted). There is no question that Rev. Proc. 2018-38 does not fit into the first two categories, and plaintiffs do not argue otherwise. Plaintiffs' argument hinges on the third category.

However, Plaintiffs are wrong when they argue that Rev. Proc. 2018-38 is a legislative rule, and thus subject to notice-and-comment, because it changes a prior reporting requirement and thus "effectively amends" 26 C.F.R. § 1.6033-2(g)(6). The tax code provides that all exempt organizations must file a return "stating specifically the items of gross income, receipts, and disbursements, and such other

36

information for the purpose of carrying out the internal revenue laws as the

Secretary may by forms or regulations prescribe." 26 U.S.C. § 6033(a)(1). This

statutory requirement to file a return is accompanied by a grant of authority to the

Secretary of the Treasury to specify the types of "other information" that the

Secretary may consider useful for the purpose of carrying out the internal revenue

laws. In exercising this authority, the Secretary promulgated a regulation

specifying what information is "*generally* required to be furnished by an

organization exempt under § 501(a)," 26 C.F.R. § 1.6033-2(a)(2)(ii) (emphasis

added), including donor names and addresses, *see id.* §§ 1.6033-2(a)(2)(ii)(f),

1.6033-2(a)(2)(iii)(d)(1). But that same regulation made clear that it would not

limit the IRS Commissioner's discretion to "relieve any organization or class of

organizations ... in whole or in part," *id.* § 1.6033-2(g)(6), from the regulation's

general rules when efficient tax administration warrants. This express reservation

of authority permits the Commissioner to adjust the general rules without

amending a word of the regulation—by exercising the authority provided in the

regulation itself. And many times over the years, the Commissioner has issued

37

revenue procedures exercising this authority, rather than amending the regulation through notice and comment.[20]

The adjustment to the general information-reporting rules in Rev. Proc. 2018-38 is therefore consistent with the regulation itself and the Commissioner's longstanding practice under the regulation, and cannot be construed as "effectively amending" this regulation. Contrary to plaintiffs' central argument, this is not a case in which "a second rule repudiates or is irreconcilable with a [prior legislative rule]" and thus qualifies as a legislative rule. *Hemp Indus. Ass'n v. D.E.A.*, 333 F.3d 1082, 1088 (9th Cir. 2003) (quoting *Blattner & Sons, Inc. v. Secr. of Labor*, 152 F.3d 1102, 1109 (9th Cir. 1998)). Rev. Proc. 2018-38 instead provides an adjustment to the general reporting rules that was authorized in the regulation itself, and this authorization was subject to notice and comment when the regulation was promulgated.

---

[20] *See, e.g.*, Rev. Proc. 2011-15, 2011-3 I.R.B. 322 (providing that certain exempt organizations with less than $50,000 in annual gross receipts are not required to file Form 990 as long as they submit a Form 990-N e-Postcard); Rev. Proc. 2003-21, 2003-1 C.B. 448 (providing that certain exempt organizations organized in U.S. possessions are not required to file Form 990); Rev. Proc. 96-10, 1996-1 C.B. 577 (providing a list of a class of organizations, affiliated with a church or convention or association of churches, that are not required to file Form 990); Rev. Proc. 95-48, 1995-2 C.B. 418 (specifying that certain governmental units and affiliates of governmental units are not required to file Form 990).

In their effort to portray the revenue procedure and regulation as irreconcilable, plaintiffs brush aside the administrative-relief provision found in § 1.6033-2(g)(6). Their vague suggestion that Rev. Proc. 2018-38 somehow exceeds the relief contemplated by the regulation because it "swallow[s] the rule" is wrong. The regulation provides for reporting of dozens of items of information by every "organization exempt from taxation under section 501(a)" on Form 990, while Rev. Proc. 2018-38 provides *partial* reporting relief affecting only *one* item of information for a fraction of organizations covered by the regulation.[21] Form 990 consists of twelve parts and sixteen schedules; Rev. Proc. 2018-38 concerns one column on one page of one schedule. If accepted, plaintiffs' sweeping theory would upend the IRS's consistent practice of issuing revenue procedures to avoid unnecessary reporting under § 6033, inhibiting the IRS's ability to reduce its collection of large amounts of private information that the IRS determines it does

---

[21] Contrary to plaintiffs' suggestion, the reporting requirements set forth in the regulation do govern organizations exempt under § 501(c)(3) as well as other specified tax-exempt organizations.

39

not need.[22] The effects on other areas of tax administration could also be significant and burdensome for both the IRS and taxpayers.[23]

To be sure, the revenue procedure does "alter the manner in which the parties present themselves ... to the agency," but that is a permissible function of procedural rules. *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014). It also specifies the "other information" that § 6033 (a)(1) requires to be reported to the IRS on a return, but that is a permissible function of interpretive rules. Critically, however, the substantive law and standards that the organization must meet to remain tax-exempt are unchanged—regardless of whether donor names and addresses are reported on annual returns or instead provided upon request. Rather than altering any of the substantive limitations on the activities of tax-exempt organizations, Rev. Proc. 2018-38 merely addresses the IRS's timing and process for collecting information that may be used by the IRS to determine compliance with those unchanged substantive criteria. Rev. Proc. 2018-38 also does not change the requirement that most tax-exempt organizations are required to file annual information returns. It merely provides relief with respect to a particular item of

_____

[22] The IRS routinely changes the information that filers must include on returns through changes to forms.

[23] The IRS routinely provides administrative relief though guidance published in the Internal Revenue Bulletin.

information (donor names and addresses) that some tax-exempt organizations are no longer required to report on their returns.[24]

Rev. Proc. 2018-38 is not itself a legislative rule, and it does not "effectively amend" a prior legislative rule. Regardless of whether certain tax-exempt organizations are required to report the names and addresses of their donors (or not), that fact does not alter any of the substantive obligations that the groups must meet to maintain their tax-exempt status. Plaintiffs were not entitled to notice and comment on Rev. Proc. 2018-38 before it went into effect. Their claims to the contrary should be dismissed.

## III.   CONCLUSION

For the foregoing reasons and the reasons discussed in the United States' motion to dismiss, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

---

[24] In this respect, Rev. Proc. 2018-38 cannot be understood as a legislative rule for an additional reason. Rev. Proc. 2018-38 eliminates a prior item of reporting for some tax-exempt organizations. It imposes no new requirements that the subject organizations were not previously required to meet. Put another way, if a group to which Rev. Proc. 2018-38 applies erroneously reports the names and addresses of its donors on its future returns, that group will not be subject to any penalty for providing the no-longer-required information.

DATED:  May 8, 2019　　　　Respectfully submitted,


　　　　　　　　　　　　RICHARD E. ZUCKERMAN
　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　 /s/ Joseph A. Sergi
　　　　　　　　　　　　JOSEPH A. SERGI
　　　　　　　　　　　　Senior Litigation Counsel
　　　　　　　　　　　　LAURA M. CONNER
　　　　　　　　　　　　LANDON M. YOST
　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　U.S. Department of Justice, Tax Division
　　　　　　　　　　　　*Attorneys for the defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief contains 9,711 words, excluding the caption, signature

block, table of contents and authorities, and certificates of service and compliance.

To make this certification, I have relied on the word count contained in the word-

processing system used to prepare the brief.


<u>s/ Landon M. Yost</u>
LANDON M. YOST
Trial Attorney



## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 8, 2019, I electronically filed the foregoing with the

Clerk of the Court using the ECF system, which will send notification of such

filing to the following counsel for plaintiffs:  Stephen C. Bullock; Raphael

Graybill; Deepak Gupta; Matthew Wessler; Daniel Wilf-Townsend; Glenn J.

Moramarco; and Katherine A. Gregory.


<u>s/ Landon M. Yost</u>
LANDON M. YOST
Trial Attorney

43