# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| STEPHEN C. BULLOCK, in his official capacity as Governor of Montana; MONTANA DEPARTMENT OF REVENUE; STATE OF NEW JERSEY,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTERNAL REVENUE SERVICE; CHARLES RETTIG, in his official capacity as Commissioner of the Internal Revenue Service; UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>*Defendants*. | Case No. 4:18-cv-00103-BMM<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Gurbir S. Grewal
ATTORNEY GENERAL OF NEW JERSEY

Glenn Moramarco
ASSISTANT ATTORNEY GENERAL
Katherine A. Gregory
DEPUTY ATTORNEY GENERAL
Richard J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625
(609) 376-3235
(609) 777-4015 (fax)
*glenn.moramarco@law.njoag.gov*
*katherine.gregory@law.njoag.gov*

*Attorneys for Plaintiff State of New Jersey*

May 22, 2019

Raphael Graybill
CHIEF LEGAL COUNSEL
OFFICE OF THE GOVERNOR
P.O. Box 200801
Helena, MT 59620-0801
(406) 444-3179
(406) 444-5529 (fax)
*raphael.graybill@mt.gov*

Deepak Gupta
Matthew W.H. Wessler
Daniel Wilf-Townsend
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
(202) 888-7792 (fax)
*deepak@guptawessler.com*

*Attorneys for Plaintiffs Stephen C. Bullock and Montana Department of Revenue*

# TABLE OF CONTENTS

Table of authorities .................................................................................................. ii

Argument .................................................................................................................. 1

    I.    Because Revenue Procedure 2018-13 is a legislative rule—not merely an interpretive or procedural rule—notice and comment were required. ......................................................................1

    II.    The plaintiffs have demonstrated Article III standing on three independently adequate grounds. ........................................................3

        A.    The plaintiffs have demonstrated informational injury. ..............3

            1.    Section 6103(d) mandates disclosure of information relevant to "the existence, or possible existence, of liability" for taxes "imposed by" the Internal Revenue Code. ............................................................... 3

            2.    The IRS's remaining arguments misunderstand the nature of informational injury. ................................. 6

        B.    The plaintiffs also have standing because they have diverted resources in response to the IRS's decision. .................8

        C.    The plaintiffs have established standing because the IRS's decision unlawfully interferes with their ability to enforce their own laws. ............................................................11

        D.    The plaintiffs are within the relevant zone of interests. ............12

    III.    The "committed to agency discretion" exception is inapplicable.........................................................................................13

Conclusion.............................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**

*Action Alliance of Senior Citizens v. Heckler*,
   789 F.2d 931 (D.C. Cir. 1986) ................................................................. 6, 8

*Association of Public Agency Customers v. Bonneville Power Administration*,
   733 F.3d 939 (9th Cir. 2013) .................................................................... 12

*ASSE International, Inc. v. Kerry*,
   803 F.3d 1059 (9th Cir. 2015) .................................................................. 13

*Citizens for Responsibility and Ethics in Washington v. Executive Office of the President*,
   587 F. Supp. 2d 48 (D.D.C. 2008) .............................................................. 7

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) ...................................................................... 9

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 973 (2017) ............................................................................... 10

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) .................................................................. 14

*Federal Election Commission v. Akins*,
   524 U.S. 11 (1998) ...................................................................................... 8

*Gunderson v. Hood*,
   268 F.3d 1149 (9th Cir. 2001) .................................................................... 2

*Hemp Industies Assocation v. DEA*,
   333 F.3d 1082 (9th Cir. 2003) .................................................................... 1

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) .................................................................................. 13

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) .................................................................................. 11

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) .................................................................. 2

*Northwest Requirements Utilities v. F.E.R.C.*,
 798 F.3d 796 (9th Cir. 2015)...................................................................................13

*People for the Ethical Treatment of Animals v. U.S. Deptartment of Agriculture*,
 797 F.3d 1087 (D.C. Cir. 2015) .............................................................................6, 8

*Public Citizen v. Carlin*,
 2 F. Supp. 2d 1 (D.D.C. 1997) ..................................................................................7

*Texas v. United States*,
 809 F.3d 134 (5th Cir. 2015).....................................................................................11

*Webster v. Doe*,
 486 U.S. 592 (1988)...................................................................................................13

*Wyoming ex rel. Crank v. United States*,
 539 F.3d 1236 (10th Cir. 2008)..................................................................................11

**Statutes and Regulations**

5 U.S.C. § 553 ..................................................................................................................6

5 U.S.C. § 706 ..................................................................................................................6

26 U.S.C. § 6103 ..............................................................................................................5

26 U.S.C. § 6104(c)(6)(B) ...............................................................................................6

36 Fed. Reg. 11,025 (June 8, 1971).................................................................................2

Revenue Procedure 2018-38............................................................................................2

N.J.A.C. 13:48-4.3(a)(9)................................................................................................10

N.J.A.C. 13:48-5.3(b)(5) ...............................................................................................10

**ARGUMENT**

**I.  Because Revenue Procedure 2018-13 is a legislative rule—not merely an interpretive or procedural rule—notice and comment were required.**

The IRS concedes that, as a result of the decision challenged in this case (known as Revenue Procedure 2018-38), certain tax-exempt entities will "no longer need to annually report [donor information] to the IRS." Doc. 51 at 1. The IRS further concedes that this decision—which worked a major change to the reporting requirements in place for forty years—"was issued without procedures that would qualify as notice and comment procedures under the Administrative Procedure Act." Doc. 52 at 3. Because Revenue Procedure 2018-38 "effectively amends" the existing rules by eliminating a previously imposed legal obligation, the agency was required to go through notice and comment before taking this important step. *See Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003).

Resisting this application of elementary administrative-law principles, the IRS advances just one defense on the merits. The rule change, it contends, "is not a legislative rule because it is either an interpretive or procedural rule." Doc. 51 at 33. The IRS makes little effort to argue that the change qualifies as an interpretive rule. It just asserts, once again, that the new rule does nothing more than interpret an underlying statute, § 6033. But, as we explained in our opening brief (at 22-23), the IRS had already issued a regulation that implemented Section 6033 by

1

requiring specific "other information," and that regulation has been on the books for more than forty years. 36 Fed. Reg. 11,025, 11,026 (June 8, 1971).

Hence, the 2018 rule change does not simply clarify the term "other information" in the statute; instead, it "revise[s] reporting requirements" under that statute's implementing regulations, "modif[ies] the information to be reported to the IRS" under those regulations, and provides that "[o]rganizations [are] relieved of the obligation to report contributors' names and addresses." Rev. Proc. 2018-38 at 1-6. Because it actually changes the regulations that were used to implement Section 6033, it is not merely "a clarification or explanation" of either the regulation or the statute. *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001).

Nor can the agency's latest decision credibly be described as a rule of "procedure or practice" that "merely addresses the IRS's timing and process for collecting information." Doc. 51 at 34. This characterization contradicts the agency's argument that the rule change is interpretive because it clarifies *what* "other information" the IRS may "require" under the statute. Doc. 51 at 34. Procedural rules are rules that "do not themselves alter the rights or interests of parties." *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014). This change alters one of the basic obligations IRS regulations impose: *what* information must be reported on returns. "The exception for procedural rules is narrowly construed." *Id.* The Court shouldn't expand it.

Finally, the IRS makes the novel argument (at 36-41) that its new rule does not "effectively amend" the reporting requirements but is instead "an adjustment to the general reporting rules" that was permitted by discretionary language in the existing regulations. This is a variant of the IRS's plea for unreviewability based on agency discretion, which we discuss in Part III below. In any event, the IRS does not explain the difference between an "amendment" and an "adjustment." And the IRS cites no precedent for the proposition that an agency can evade notice and comment on what would otherwise be a substantive change to existing legal requirements just because the agency reserves for itself discretion to change its rules. If that were the law, it would create a major hole in the APA's procedural requirements—as our opening brief explains (at 52). For example, if the Affordable Care Act were implemented through a rule providing that "HHS may use its discretion to make future changes to the rules governing health exchanges," nobody could seriously claim that HHS could do so without notice and comment.

## II.  The plaintiffs have demonstrated Article III standing on three independently adequate grounds.

### A. The plaintiffs have demonstrated informational injury.

#### 1. Section 6103(d) mandates disclosure of information relevant to "the existence, or possible existence, of liability" for taxes "imposed by" the Internal Revenue Code.

As our opening brief explains (at 26-28), it is well established that

3

informational injury arises when a plaintiff is unable to obtain information to which it is entitled by statute. Here, Section 6103(d) mandates that "returns and return information with respect to taxes imposed by" a broad swath of the federal tax code "shall be open to inspection by, or disclosure to, any State agency, body, or commission" that is "charged under the laws of such State with responsibility for the administration of State tax laws," "for the purpose of . . . the administration of such laws." The IRS's lead argument (at 5-8) is that this statute does not require the federal government to disclose substantial-contributor information to state tax officials at all. Such information, the IRS reasons, is not encompassed within "returns and return information with respect to taxes imposed" because no taxes are "imposed" on tax-exempt entities. On this logic, Section 6103(d) would not cover returns or return information for the many entities (including some of the largest corporations in the United States) that regularly pay no federal taxes by claiming a variety of exemptions.

This cramped reading is at odds with both the text and purpose of the statute—including the statute's definitions of "returns and return information," discussed at length in our opening brief (at 4-7, 35-37). The term "return information" encompasses all "data . . . collected by the Secretary with respect to a return or with respect to *the determination of the existence, or possible existence, of liability* (or the amount thereof) of any person under this title for any tax, penalty, interest, fine,

4

forfeiture, or other imposition, or offense." 26 U.S.C. § 6103 (emphasis added). The statute thus mandates the disclosure of information relevant to determining the "possible existence" of liability for taxes "imposed by" the Internal Revenue Code—even if it turns out that the entity in fact has no liability, as is true of all pass-through entities. Were the law otherwise, there would have been no reason for Congress to use the phrase "existence, or possible existence, of liability." The IRS's reading gives no meaning to this key phrase. Nor does the IRS respond to our explanation (at 36-37) of the many ways in which substantial-contributor information is relevant to determining tax liability and tax exemption. Likewise, the definition of the other relevant statutory term, "returns," is also broad, encompassing "any tax or information return … including supporting schedules, attachments." *Id.* So, even if the term "return information" were somehow insufficient, "returns" would nevertheless include the Schedules B filed by organizations seeking an exemption because they are undoubtedly "supporting schedules" and "information return."[1]

---

[1] The IRS claims (at 7-8) that our reading of Section 6103(d) renders Section 6104(c) superfluous. But the term "appropriate State officer" in 6104(c) includes "the State tax officer" and, in some circumstances, "any other State official charged with overseeing organizations of the type described in section 501(c)(3)," and, in other circumstances, an agency head "designated by the State attorney general as having primary responsibility for overseeing the solicitation of funds for charitable purposes." § 6104(c)(6)(B). By contrast, 6103(d) makes information

5

## 2. The IRS's remaining arguments misunderstand the nature of informational injury.

The IRS next argues that the plaintiffs lack informational injury even assuming that Section 6103(d) gives them a statutory right to disclosure of the relevant returns and return information. *First*, the IRS reiterates (at 8-10) its mistaken claim that the plaintiffs are asserting a "right to dictate what information it collects." Not so. As we previously explained (at 34-35), the plaintiffs are seeking to enforce the APA's bedrock legal requirement that the IRS may not change its regulations (in this case, regulations concerning collection of information) without going through notice and comment procedures. *See* 5 U.S.C. §§ 553, 706.

The IRS has no good response to the cases in which plaintiffs were found to have Article III standing to enforce objections to agency decisions cutting off the flow of information available to those plaintiffs in the future. *See Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 935, 937 (D.C. Cir. 1986) (plaintiffs who "alleged that the HHS regulations were procedurally deficient under the Administrative Procedure Act" had standing where regulations would "significantly restrict" the "flow of information" available to them); *People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*, 797 F.3d 1087, 1089, 1094-95 (D.C. Cir. 2015) (organization challenging agency action as unlawfully withheld in violation of the

---

available only to state *tax* officials, and then "only to the extent necessary" for tax administration.

6

APA had standing because it would suffer future "denial of access to . . . information" that, it "asserts, the USDA would provide" if the agency had not violated the APA); *Citizens for Responsibility and Ethics in Washington v. Executive Office of the President*, 587 F.Supp.2d 48, 51-52, 61 (D.D.C. 2008) (plaintiff that brought an APA challenge to a change in policy on access to electronic information had standing because it would "shrink[] the pool of records" available to the plaintiffs through "future requests"); *Public Citizen v. Carlin*, 2 F.Supp.2d 1, 2, 6 (D.D.C. 1997) (plaintiffs had standing to challenge agency's policy change as "arbitrary and capricious, irrational and contrary to law" because "they face a real risk that records will not be available to them" "in the future"). None of these cases involved an asserted "right to dictate what information" the agency collected. Neither does this case.

*Second*, the IRS argues (at 11-12) that the plaintiffs may not premise their injury on the denial of a "future flow of information" because "the informational injury cases discussed by plaintiffs in this context involve FOIA requests" and "it is not at all apparent that this doctrine applies outside of the FOIA realm."

But the informational-injury doctrine is not limited to the FOIA context. Indeed, one of the Supreme Court's seminal informational-injury cases held that the plaintiffs suffered injury in fact because of "their inability to obtain information" in the future—namely "lists of . . . donors"—that, on their view of the

7

Federal Election Campaign Act, "the statute require[d]" be made public. *FEC v. Akins*, 524 U.S. 11, 21 (1998). And the IRS offers no principled basis for distinguishing, for purposes of Article III standing, between FOIA cases and cases involving other statutory or regulatory information mandates. In any event, if the standards were different, one would assume they would be *stricter* for FOIA—a statute that lets anyone request virtually any non-exempt government record.

The IRS (at 11 n.7) also tries to cast aside "two non-FOIA cases cited by plaintiffs in this context" as "not informational injury cases." But the standing analysis in those cases specifically rested on the fact that the plaintiffs were "injured by a loss of information" because of challenged policies that cut off the availability of a "flow of information" in the future. *Action Alliance*, 789 F.2d at 937, 939 n.9; *see also id.* at 943 n.14 (explaining that the agency's failure to issue regulations "deprives [the plaintiff] of information" whose disclosure would otherwise have been required by law); *People for Ethical Treatment*, 797 F.3d at 1095 (injury consisted of "a lack of information" that "PETA asserts, the USDA would provide if it complied with its legal obligations"). So too here.

### B. The plaintiffs also have standing because they have diverted resources in response to the IRS's decision.

Apart from informational injury, the plaintiffs have also established standing by showing that the IRS's unlawful decision has caused them to divert scarce resources—a well-established basis for standing. Doc. 42 at 38-43. The IRS's chief

8

response to this evidence is to repeat (at 13-15), over and over again, that "plaintiffs make only abstract and conclusory allegations" about the consequent diversion of their resources. *See* Doc. 51 at 14-15 ("the allegations are conclusory," "such conclusory and conjectural allegations," "conclusory allegations," "allegations are conclusory," "Plaintiffs' conclusory allegations"). But saying this, even repeatedly, does not make it so.

To the contrary, Montana and New Jersey have offered "uncontradicted evidence that enforcement of [Revenue Procedure 2018-38] has forced [them] to divert resources, independent of expenses for this litigation, that [they] would have spent in other ways." *Comite de Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011). They have done this with declarations from officials in the Montana Department of Revenue and the New Jersey Division of Consumer Affairs, specifying precisely how they have had to divert resources. Under binding precedent, that is sufficient to show Article III standing.

The IRS does not actually address this evidence. It makes no attempt to rebut Montana's showing that, because its existing forms "do not contain the level of specificity" that used to be required on Schedule B, it must "assume the burden of developing unique processes to solicit" this information independently. Walborn Decl. ¶ 12. Specifically, that burden includes paid staff time that must be spent to develop a resource plan for how best to respond to the IRS's decision, including the

9

budgetary outlays required to implement whatever long-term solution the Department is able to devise. *Id.* ¶¶ 16-18. Montana is thus *already* expending money to adjust to the changes wrought by the IRS's decision. *Id.*

New Jersey is as well. It has *already* spent and will continue to spend significant resources as a result of the IRS's rule change. Because of that decision, New Jersey has had to create a new regulatory process for the relevant entities to report substantial-contributor information via an alternative mechanism. Rodríguez Decl. ¶ 16. The New Jersey's Division of Consumer Affairs has had to propose new rules, which are now in effect,[2] and which have required months of research and review by regulatory specialists and legal counsel. *Id.* It also anticipates that reduced compliance rates will require it to expend additional resources on enforcement. *Id.* ¶¶ 9, 19-21. "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). Here, the plaintiffs have pointed to far more than a "small amount," identifying administrative burdens as well as the budgetary consequences of those burdens.

Unable to contest the plaintiffs' evidence, the IRS mounts a novel legal attack (at 16-20), arguing for a categorical rule that "a state [cannot] demonstrate an Article III injury" under the well-established body of cases concerning diversion

---

[2] *See* N.J.A.C. 13:48-4.3(a)(9) and 13:48-5.3(b)(5) (effective May 6, 2019).

of resources. Doc. 51 at 16. But this argument has no support in existing case law. And imposing a *higher* burden on state governments than on all manner of advocacy organizations would invert the Supreme Court's rule that state government entities are "entitled to special solicitude" in the Article III standing analysis. *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007); *cf. Texas v. United States*, 809 F.3d 134, 152-53 (5th Cir. 2015) (according the State of Texas "special solicitude" for standing purposes in a suit against the federal government and finding standing in part based on likely state expenditures in response to a change in federal policy).[3]

### C. The plaintiffs have established standing because the IRS's decision unlawfully interferes with their ability to enforce their own laws.

As to the plaintiffs' third basis for standing—unlawful interference with their ability to enforce their own laws—the IRS contends that eliminating the substantial-contributor requirements "has not interfered in any way with plaintiffs' ability to pursue their own policies." Doc. 51 at 22. But the IRS cites nothing to support this assertion. And it does nothing to rebut our showing that the IRS's repeal of its reporting requirements "interferes with [their] ability to enforce [their] legal code[s]." *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008). As our opening brief explains (at 44-45), Montana structured the

---

[3] The IRS's claim that we lack associational standing (at 17) is inapposite. The plaintiffs assert *direct* injury—not derivative injury for harm to people represented by an association.

11

administration of its tax laws on the assumption that substantial-contributor information would be available and that the IRS would continue to collect it. Walborn Decl. ¶ 9-10. And New Jersey relies on this information for its regulation of charitable organizations. Rodríguez Decl. ¶ 12. The IRS offers no response.

### D. The plaintiffs are within the relevant zone of interests.

In addition to contesting the plaintiffs' injury in fact, the IRS also questions whether they are within the relevant zone of interests. As our opening brief explains, the zone-of-interests test "is not meant to be especially demanding," consistent with "Congress's evident intent when enacting the APA to make agency action presumptively reviewable." *Ass'n. of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 954 (9th Cir. 2013). Here, the interest sought to be protected is our interest in obtaining information that the IRS is required by statute to disclose. The IRS cannot seriously deny that we are within the zone of interest to be protected by the relevant information-sharing statute, which protects *only* the interests of a "State, agency, body, or commission . . . which is charged under the laws of such State with responsibility for the administration of State tax laws." 26 U.S.C. § 6103(d). The zone of interests could hardly have been more precisely and tightly drawn for this purpose. The plaintiffs' interests are thus anything but "marginally related to or inconsistent with the purposes implicit in the statute." *Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796,

12

808 (9th Cir. 2015).[4]

### III. The "committed to agency discretion" exception is inapplicable.

The IRS makes one last attempt to evade judicial review, arguing that this is one of "those rare instances" in which there is "no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015). Relying on *Webster v. Doe*, 486 U.S. 592 (1988), the IRS analogizes its authority to set reporting requirements to the CIA Director's discretionary decisions under the National Security Act—decisions Congress plainly insulated from review.

But, as the IRS appears to acknowledge, there's a big difference between the "substantive reviewability" of discretionary decisions and review of the APA's notice-and-comment requirements were followed. *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993); *see* Doc. 51 at 32 n.19 (acknowledging the view that "courts may review a rule for procedural compliance regardless of whether the rule's substance is reviewable"). "[E]ven where the substance or result of a decision is committed fully to an agency's discretion," courts may still review whether the agency "followed whatever legal restrictions applied to [its] decision-making process." *Drakes Bay*

---

[4] The IRS suggests (without authority) that a plaintiff must allege violation of a statute other than the APA to sue over notice-and-comment requirements. No authority of which we're aware so requires, and the IRS cites none. The plaintiffs here claim a violation of the APA; we're not employing the APA as a vehicle to assert a violation of some other statute.

13

*Oyster Co. v. Jewell*, 747 F.3d 1073, 1082-83 (9th Cir. 2014). That is all the plaintiffs ask this Court to do.

## CONCLUSION

The motion for summary judgment should be granted.

/s/Glenn Moramarco
Glenn Moramarco
ASSISTANT ATTORNEY GENERAL
Katherine A. Gregory
DEPUTY ATTORNEY GENERAL

Gurbir S. Grewal
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Mark Street, 8th Floor, West Wing
Trenton, New Jersey 08625
(609) 376-3235
(609) 777-4015 (fax)
*glenn.moramarco@law.njoag.gov*
*katherine.gregory@law.njoag.gov*

*Attorneys for Plaintiff State of New Jersey*

/s/ Raphael Graybill
Raphael Graybill
CHIEF LEGAL COUNSEL
OFFICE OF THE GOVERNOR
P.O. Box 200801
Helena, MT 59620-0801
(406) 444-3179
(406) 444-5529 (fax)
*raphael.graybill@mt.gov*

/s/ Deepak Gupta
Deepak Gupta
Matthew W.H. Wessler
Daniel Wilf-Townsend
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
(202) 888-7792
*deepak@guptawessler.com*

*Attorneys for Plaintiffs Stephen C. Bullock and Montana Department of Revenue*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1 of the Rules of Procedure of the United States District Court for the District of Montana, I certify the following concerning the foregoing brief:

1. The document is double spaced except for headings, footnotes, and quoted and indented material.

2. The document is proportionally spaced, using Baskerville, 14 point font.

3. The document contains 3,249 words as calculated by Microsoft Word.

Dated: May 22, 2019

*/s/ Deepak Gupta*
Deepak Gupta

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2019, I electronically filed the foregoing reply brief with the Clerk of the Court using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta